JOHN O. GREUSEL, APPELLEE, V. CHARLES T. PAYNE, AP-
PELLANT.

FILED NOVEMBER 17, 1921. No. 21335.

1. Appeal in Equity: TRIAL DE NOVO. When an action in equity is
appealed, it is the duty of this court to try the issues *de novo*
and to reach an independent conclusion without reference to the
findings of the district court. Rev. St. 1913, sec. 8198. But when
the evidence on material issues so conflicts that it cannot be
reconciled, "this court will consider the fact that the trial court
observed the witnesses and their manner of testifying, and must
have adopted one version of the facts rather than the opposite."
*Shafer v. Beatrice State Bank*, 99 Neb. 317.

2. Trusts: PARTNERSHIP: TRANSACTIONS IN LANDS. When two or
more persons agree orally to buy and to deal generally in land,
each of the parties contributing equally to the purchase price,
and when the title to the land so acquired has, by agreement,
been placed in the name of one of the parties, a trust relation is
thereby created and the trustee holding the title can be required
to account in equity to his associates for the profits arising from
the transactions.

3. Statute of Frauds: TRANSACTIONS IN LANDS: PAROL CONTRACT.
When two or more persons orally agree to furnish the money to
buy real estate to sell again and to share the profits and the
losses arising from the joint enterprise, such agreement does not
come within the inhibition of the statute of frauds and need not
be in writing. Rev. St. 1913, ch. 25, secs. 2621-2652.

APPEAL from the district court for Lancaster county:
LEONARD A. FLANSBURG, JUDGE. *Affirmed.*

*Fawcett & Mockett, F. V. Robinson* and *A. L. Chase,*
for appellant.

*Bruce Fullerton* and *Reese & Stout, contra.*

Heard before MORRISSEY, C.J., LETTON, DEAN and
DAY, JJ.

DEAN, J.

This is a suit in equity for an accounting. In 1914
plaintiff and R. J. Miller, under the firm name of Miller

& Greusel, were engaged in the real estate business in Lincoln. It is alleged by plaintiff that, in the same year, the defendant became associated with himself and Miller, under an oral agreement of partnership, for the purpose of buying and selling real estate, mortgage securities, and the like. When, some time thereafter, plaintiff sought to effect a settlement with defendant, for his share of the profits in the business venture, he denied the existence of a partnership or that he was at all liable to plaintiff in any sum for any of the profits or the proceeds of any of the property in which plaintiff claimed the right to share. Defendant also asserted exclusive ownership of all real estate and all securities, approximating $20,000 in value, that are in controversy here and in which plaintiff contends that he owns a partnership interest. Upon defendant's refusal to account to plaintiff he began this action and recovered a judgment for $4,450.20, from which defendant appealed.

The weight of the evidence clearly establishes plaintiff's contention that an, oral partnership agreement was entered into by the plaintiff, the defendant and Miller and that it carried on a successful and profitable real estate business. It appears that, under the agreement, defendant was to have as his share one-half of the net profits arising out of the business and that plaintiff and Miller were each to have one-fourth of the profits as their share, and that the losses, if any, were to be borne by the partners in the same *pro rata* proportion. It was shown that defendant was to collect all rents, interest and income, and account to the partners therefor, the parties having agreed that the real estate and mortgage securities and the like should be taken in defendant's name, for convenience in making transfers of the property. In case of a sale or exchange of such properties defendant was to make the necessary conveyances, or assignments, as the case might require, to the respective grantees or purchasers. It may be noted that the interest of Miller is not involved here, he having effected a settlement with

defendant before this suit was begun.

Apparently to finance the new business venture, plaintiff and defendant and Miller, in May, 1914, borrowed $4,400 from a bank, for which they gave their joint and several note signed as individuals. With the money so obtained they purchased a 160-acre tract of land in Seward county and shortly thereafter exchanged the land for a Lincoln garage. Soon afterward the garage was exchanged for land in Scotts Bluff county and, as representing the difference in value, the partnership received a $2,000 mortgage on the garage. Later the Scotts Bluff land was exchanged for a 160-acre tract of land in Merrick county, and for the difference in value between the two properties the partnership received a $5,000 mortgage on certain Lincoln city property. A stock of merchandise, that was acquired by the partnership, was exchanged for a ten-acre orchard near Lincoln, upon which there was a $700 mortgage, and, to the end that a payment might be made on the property, an additional sum of $500 was borrowed from the same bank where the $4,400 was obtained, the three men again jointly executing a new note, which is in evidence, but in the principal sum of $4,990.20. It appears that all over $4,400, in the renewal note, represented unpaid interest and also the $500 newly borrowed. A second mortgage of $300 on the Hartley orchard was paid off and plaintiff paid to defendant $77.67 as his share of the mortgage obligation including interest. It appears that plaintiff and defendant from time to time each contributed money for partnership expenses and in payment of interest and the like. A course of partnership dealing is shown by six or seven checks that were drawn by plaintiff to defendant's order and collected by him and by him applied on partnership business. The check for $77.67, which represents plaintiff's one-fourth part of the $300 mortgage obligation, has already been noticed. Another check is for $33.80, payable to defendant, to apply on interest on the $4,400 note. Another is for $54.80 for the examina-

tion of an abstract of title to the garage property. A check for $50 is for plaintiff's one-fourth part of the $200 earnest money that was paid on the Seward county farm. Another for $30.84 represented one-fourth of the difference between the income and the expenses on one of the city properties that came into the hands of the partnership. A check for $5 by Greusel paid the water rent on the O street garage. Another for $22.74 represented plaintiff's payment of one-fourth of the interest that became due on the loan on the Merrick county land. This check was made payable by plaintiff to the owner of the loan or to his agent.

It plainly appears that the Hartley orchard of ten acres, of the net value of $3,300, and the Merrick county quarter-section, of the net value of $12,500, were converted by defendant to his own use. He deeded the Merrick county land to his daughter, and the Hartley orchard was deeded to another, and in exchange therefor he took deeds to real estate that were executed in blank. Among other transactions it was shown that defendant collected the garage mortgage, which with interest amounted to $2,120. He collected also the mortgage on other Lincoln city property, amounting to $5,600, including interest, or a total of $7,720 that belonged to the partnership. With this money defendant paid $5,719.15 in satisfaction of the partnership debt to the bank. Of the interest charge on the principal debt, as hereinbefore noted, plaintiff had theretofore paid $33.80 to defendant to apply thereon. So that, after deducting the $33.80 so paid by plaintiff, there remained in the hands of defendant $2,000.85 of partnership funds that, with other property belonging to the partnership, was converted by him to his own use, amounting to $17,800.85 in all.

Defendant denied generally all of the material evidence introduced on plaintiff's part. He denied that he entered into any contract of partnership with plaintiff either alone or in connection with Miller. He said that some time in May, 1914, Miller personally, and not as a

member of the firm of Miller & Greusel, solicited his aid in handling the Seward county tract of land and the Lincoln garage, and that in pursuance of an arrangement then entered into between them he undertook with Miller alone to handle both properties. F. M. Davis was a party to the exchange of the Scotts Bluff land for the Lincoln garage, in which one of the mortgages taken in an exchange of property was involved. He testified that defendant told him that Greusel and Miller were both "interested in it (the mortgage) the same as he was," and that plaintiff, defendant and Miller together owned the Lincoln garage. Defendant admitted that plaintiff went in a car with him and Miller to the bank and there joined with them in signing the first note of $4,400, and that when it became necessary to borrow more money and to renew the note plaintiff again went to the bank with them and again signed the renewal note for $4,-990.20. He testified that he was surprised when plaintiff signed the note, but that he did not tell him so, nor any other person, and that so far as he knew he signed it voluntarily or perhaps at the behest of Miller. It appears that on April 8, 1916, the $4,990.20 note was again renewed and that defendant alone signed it. But it also appears that he paid the note, so renewed in his own name and which was in fact an indebtedness of the partnership, out of a part of the proceeds of the sale of the two mortgages that the partnership owned, all as hereinbefore noted.

The conclusion is that the record discloses a continuous course of partnership dealing. It is clear that defendant did not account to plaintiff for his share of the partnership profits nor for the proceeds arising from the sale or exchange or transfer of the properties that he disposed of.

Defendant argues that the agreement, even if established, "is within the statute of frauds (Rev. St. 1913, sec. 2623), and void, unless in writing." He cites *Norton v. Brink*, 75 Neb. 566, on rehearing, 575. That case does

not seem to be in point.   In that case there was a parol agreement between two persons to buy a tract of land together.   One of the parties furnished all of the purchase price and took the title in his own name, the other agreeing to pay one-half of the purchase price on demand.   It was there held that a partnership was not created and that a resulting trust did not arise in favor of one who contributed nothing to the payment of the purchase price.   Clearly that is not the case before us. It is perfectly clear that plaintiff, defendant and Miller together borrowed and were jointly liable for the money that was used to purchase the property upon which the business enterprise was based and from which subsequent profits were realized and property was accumulated.

The rule is well stated in *Bear v. Koenigstein*, 16 Neb. 65.   It was there held that, where three persons orally agreed to buy a tract of land and each of them contributed one-third of the purchase price and each was to have an undivided one-third of the land so purchased, a trust resulted in favor of two of the contributing persons against the third person, in whose name the title was taken.   See, also, *Rice v. Parrott*, 76 Neb. 501, on rehearing, 505.   This question has been passed on in other states.   In *Speyer v. Desjardins,* 144 Ill. 641, the court held:   "It is well settled that an oral contract by two or more persons to purchase real estate for their joint benefit is within the statute of frauds, but an agreement for a partnership for the purpose of dealing and trading in lands for profit is not within the statute, and the fact of the existence of the partnership and the extent of each partner's interest may be shown by parol evidence." Judge Cooley, in construing a statute (How. St. sec. 6181) similar to section 2625, Rev. St. 1913, observed that the inhibition against the enforcement of a verbal contract "for the sale of any lands, or any interest in lands," contemplates a transaction between vendor and vendee as principals.   *Carr v. Leavitt,* 54 Mich. 540.   The

Greusel v. Payne.

subject is discussed in *Fountain v. Menard,* 53 Minn. 443, and in 20 R. C. L. 862, sec. 72.

We have tried the case *de novo,* and the conclusion is that plaintiff and defendant were members of a partnership wherein each partner furnished an equal amount of the capital and as partners bought, exchanged and dealt generally in real estate and mortgage securities. It seems clear that defendant did not account to plaintiff for his share of the partnership property that was acquired by the partnership and that was placed in his hands.

In the present case, as in all cases of this character, the district court had the advantage, that is denied a reviewing court, of seeing, hearing and observing the manner of the witnesses. Nevertheless the law requires that, when an action in equity is appealed, it is the duty of this court to try the issues *de novo* and to reach an independent conclusion without reference to the findings of the district court. Rev. St. 1913, sec. 8198. But when the evidence on material issues so conflicts that it cannot be reconciled, "this court will consider the fact that the trial court observed the witnesses and their manner of testifying, and must have adopted one version of the facts rather than the opposite." *Shafer v. Beatrice State Bank,* 99 Neb. 317; *Gaunt v. Smith,* 103 Neb. 506.

When two or more persons agree orally to buy and deal generally in land, each of the parties contributing equally to the purchase price, and the title to the land so acquired has, by agreement, been placed in the name of one of the parties, a trust relation arises and the trustee can be required to account in equity to the others for the profits arising from the transactions. The rule is that in such case the agreement does not come within the inhibition of the statute of frauds and need not be in writing. Rev. St. 1913, secs. 2621-2652.

The judgment is

AFFIRMED.