GUST W. JOHNSON, APPELLANT, v. S. M. ERICKSON ET AL., APPELLEES.

FILED JUNE 27, 1923. No. 22317.

1. Executors and Administrators: SALE OF REALTY: PURCHASE BY EXECUTOR. An executor's sale of real estate, made pursuant to a power conferred by the will of the decedent, at which the executor is, either directly or indirectly, the purchaser, is voidable.

2. ———: ———: ———. Where, at an executor's sale pursuant to a power contained in the will, the executor is, either directly or indirectly, the purchaser, it is immaterial that he paid full value for the land, and that no actual fraud was intended. The law forbids such a sale, and it may be avoided in a suit by the interested parties.

3. Appeal: TRIAL DE NOVO. While the law requires this court, in

determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying.

APPEAL from the district court for Kearney county: WILLIAM A. DILWORTH, JUDGE. *Affirmed.*

*C. P. Anderbery,* for appellant.

*F. L. Carrico* and *L. W. Hague, contra.*

Heard before MORRISSEY, C. J., ALDRICH and GOOD, JJ., BEGLEY, District Judge.

GOOD, J.

This action was brought to cancel an executor's deed, made pursuant to a power of sale in the will of John F. Johnson, deceased, on the ground that the sale was made indirectly to one of the two joint executors. The testator left surviving him his widow and two sons, both of whom are of full age. The widow died intestate prior to the beginning of this action. S. M. Erickson and Will A. Johnson were nominated as executors and duly qualified as such. By the fifth paragraph of his will, testator directed his executors to sell a particularly described 80-acre tract of land, and directed the disposition of the proceeds of the sale.

Pursuant to the power of sale conferred by the will, the executors, on June 9, 1917, for a consideration of $6,000, sold and conveyed the land to Ferdinand Hulquist, a nephew of Erickson, one of the executors, and at the same time the widow and sons of testator joined in a quitclaim deed to Hulquist. Proceeds of sale were disposed of as directed in the will. Administration proceedings were completed and the executors discharged from their trust on August 24, 1917. On September 29, 1917, Hulquist, for a consideration of $6,000, conveyed the land in question to the said S. M. Erickson. This action is prosecuted by the sons of the testator to cancel

the quitclaim deed and executor's deed to Hulquist, and also the deed from Hulquist to Erickson. Plaintiffs offer to reimburse Erickson for the purchase price paid by him, together with interest thereon, and pray for an accounting of the rents and profits during the time that Hulquist and Erickson have been in possession of the land.

The district court found for the defendants, and that the executor's sale was made in good faith to Hulquist, and that he was not acting for Erickson in purchasing the land. Plaintiffs have appealed.

1. Defendants urge that the sale to Hulquist by the executors was not a judicial sale, because it was made pursuant to a power conferred by the will, and that it is, therefore, not governed by the provisions of section 1408, Comp. St. 1922, which declares that an executor's sale of a decedent's real estate shall be void if the executor is the purchaser, or is interested in the purchase, of the land. It may be conceded that said section refers only to judicial sales made pursuant to an order of the district court, but plaintiffs' right to maintain the action is not dependent upon this statute. Under the rule at common law, an executor could not purchase, either directly or indirectly, at a sale of his decedent's lands under a power in the will. *O'Dell v. Rogers,* 44 Wis. 136. The reason for the rule would be the same in either case. It is but a general application of the rule against the purchase by the trustee of property belonging to the trust estate. It is founded upon the unfairness that is likely to follow upon a sale in which the same person is both vendor and purchaser.

2. Defendants further urge that the sale is not subject to attack, because the land was sold for its full value and no one was defrauded. The rule, however, is that actual fraud is not necessary to invalidate such a sale. "And it matters not if he pays all the property is worth, nor if the sale is advantageous to the *cestui que trust.* It is a matter, of course, for courts of equity to

set the sale aside upon the application of the *cestui que trust*. The object of the rule is to afford the *cestui que trust* most ample protection against fraud and injustice, and to remove out of the way of the trustee all inducements and temptations to speculate upon the trust property, or to manage and manipulate the same for his own benefit." *Terwilliger v. Brown,* 44 N. Y. 237. And in *Miller v. Rich,* 204 Ill. 444, it is said: "It makes no difference, in such case, that the intentions of the administrator are honest, and that there is no fraud in fact. The sale will be set aside upon the general ground that trustees, and others occupying fiduciary relations, cannot purchase on their own account the property entrusted to their management." A full collection of the authorities upon this question may be found in the note to *Haymond v. Hyer,* L. R. A. 1918B, 1.

The record shows that $6,000 was the full market value of the land at the time it was sold to Hulquist by the executors. This fact would not make the sale valid, if there were any understanding, secret or otherwise, that Hulquist should subsequently convey the land to one of the executors, but it may properly be considered as a factor in determining the *bona fides* of the sale to Hulquist. There would be less incentive on the part of Erickson to acquire title by subterfuge, if he were paying full value for the land, than there would be if he were getting the land for less than its actual value. Another fact, which should not be overlooked, is that plaintiffs had knowledge of the conveyance to Hulquist for nearly three years before they instituted this action, and during that time the value of the land had greatly increased, in common with the rise in land values generally in Nebraska during the period from 1917 to 1920. Both the executors and their vendee, Hulquist, testified that there was no arrangement or understanding, secret or otherwise, when the sale was made to Hulquist, that he was purchasing it for Erickson, or that it should be

subsequently conveyed to Erickson for the same considera-
tion or any other sum.   There is no direct evidence to the
contrary, but there is evidence in the record of a number
of circumstances that, unexplained, would tend very
strongly to indicate that it was an indirect sale to
Erickson.   Some of these circumstances are fully and
fairly explained, and, as to some of the others, there is a
sharp conflict in the evidence.

3.   While the law requires this court to hear and
determine, as a trial *de novo,* an appeal in an equity
action involving questions of fact, and to reach an in-
dependent conclusion without reference to the findings of
the district court, this court will, in determining the
weight of the evidence, where there is an irreconcilable
conflict therein on a material issue, consider the fact
that the trial court observed the witnesses and their
manner of testifying.   *Greusel v. Payne,* 107 Neb. 84;
*Shafer v. Beatrice State Bank,* 99 Neb. 317.

After a careful examination of all the evidence, we are
of the opinion that the judgment and decree of the dis-
trict court is supported by the evidence and is in accord
with equity and justice.   The view we take of the ques-
tion of fact makes it unnecessary to consider other issues
that have been presented and argued in the briefs.

                                        AFFIRMED.