Davis v. Beem.

---

ESSIE E. DAVIS ET AL., APPELLEES, V. ELMER BEEM ET AL., APPELLANTS.

FILED JULY 1, 1927.   NO. 24969.

1. **Appeal.** A finding that shows the result of a judicial inspection of premises involved in a suit in equity may be considered on appeal from the final decree, if applicable to the issues determined.
2. **Waters:** RIGHTS OF RIPARIAN OWNERS. The principle that "A landowner who is not guilty of negligence may, in the interest of good husbandry, accelerate surface water in the natural course of drainage without liability to the lower proprietor," *held* inapplicable to the water of a permanent lake on a cattle ranch in a semi-arid region.
3. ———: DRAINAGE OF LAKES: INJUNCTION. The draining of a lake through a cattle ranch over objections of an owner who would suffer recurring damages by the drainage, *held* properly prevented by injunction under the evidence outlined in the opinion.

APPEAL from the district court for Cherry county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Holmes, Chambers & Holland,* for appellants.

*James C. Quigley* and *J. J. Harrington, contra.*

Heard before GOSS, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

Rose, J.

The litigants are owners of cattle ranches in Cherry county. By means of open ditches partially completed defendants attempted to exercise the right of drainage from their lands through intervening lands to hay valleys of plaintiffs. In a suit in equity for an injunction, the unfinished work was stopped by a preliminary order and defendants were required to make a dam in a partially completed ditch. The facts constituting the cause of action and the defense were formally pleaded. During a trial of the issues in the district court for Cherry county, testimony covering over 400 pages of the record was adduced. The result was a perpetual injunction in favor of plaintiffs. Defendants appealed.

The appeal presents the cause for trial *de novo* and requires consideration of conflicting evidence on the controlling issues, but owing to the great volume of the testimony an analysis of the evidence in detail will not be attempted.

The theory of plaintiffs is that defendants, if not prevented by injunction, will, by cutting ditches through natural barriers, empty permanent lakes into a valley that will conduct the lake waters to, and annually destroy, growing crops of hay in meadows on the cattle ranch of plaintiffs. The petition, answer and reply present also the issue that the drainage contemplated by defendants, if permitted, will open a natural surface barrier between the water-shed in which the lakes are situated and turn the lake waters into a different water-shed or valley where they will eventually reach and irreparably injure the meadows and crops of plaintiffs.

The theory of the defense is that the ditches were dug in the natural course of drainage where defendants commenced in good faith to make them in the interest of good husbandry, their purpose being to drain the lakes and produce hay in the empty basins, without pecuniary damage to plaintiffs. They insist that their lakes can be emptied

Davis v. Beem.

after harvest when the water in passing through the ranch
of plaintiffs in a natural depression and course of drain-
age will not injure it or the crops, and that thereafter the
surface waters from the area drained will be beneficial to
plaintiffs or at least harmless.

Each of the theories outlined was supported by testimony
of engineers and also by nonexpert witnesses familiar with
the topography of the ranches and with the surrounding
country.   On behalf of plaintiffs there is testimony tend-
ing to prove·facts or justify inferences summarized for the
purposes of the appeal as follows:  The cattle ranch owned
by plaintiffs contains several thousand acres of land con-
sisting principally of hills for pasturage.   The hills are
too dry to produce grass for hay, but plaintiffs own also
two valleys among the hills where the moisture is suffi-
cient for that purpose.   The witnesses called one of these
valleys "Home Valley" and the other "Race-horse Valley."
The two valleys produce annually about 1,000 tons of hay
on approximately 800 acres.   The lake waters diverted by
artificial ditches reach the Home Valley first.   That val-
ley contains a meadow about three miles in length with a
maximum width of half a mile.   The meadow is nearly
level both longitudinally and transversally.   Through it
there is no defined water-course or depression.   In the
natural state of Home Valley, lake waters, if drained into
it, will spread over the entire meadow and destroy, or
injure, the crops, consisting, as they do, of timothy, clover
and wild grasses.   The uncompleted drainage system
adopted by defendants has already injured plaintiffs' grow-
ing crops and will result in irreparable injury unless en-
joined.   West or northwest of plaintiffs' ranch defendants
own cattle ranches consisting also of hills and valleys.   On
the ranch of one of the defendants there is what is known
as "Felts Lake," a natural body of water with an area of
approximately 150 acres and an average depth of 5 feet,
into which other lakes had been drained.   It has no natural
surface outlet and except for abnormal precipitation at
rare intervals there is no overflow.   The distance from

Felts Lake through Home Valley to Race-horse Valley is about 11 miles with an average fall of less than 7 feet to the mile. Defendants dug a ditch nearly 3 feet deep through a natural barrier surrounding Felts Lake and by extending the drain eastward or southeastward turned part of the lake water loose on a ranch between the ranches of the adverse litigants, from whence the diverted lake waters followed the natural slope of the country to the hay valleys of plaintiffs and injured their crops. It is the intention of defendants to empty Felts Lake by lowering the bottom of their ditch at their artificial outlet to a depth of 7 or 8 feet. Though some of the water from that lake, as nature left it, percolates through sand and eventually supplies beneficial moisture for crops in the Home Valley and in the Race-horse Valley, Felts Lake is in a different water-shed, where the natural course of surface drainage is through a different valley. The bed of Felts Lake, if emptied in the manner contemplated by defendants, will collect rain and melted snow from an extensive water-shed and the ditch, the connecting valleys and the general slope of the country will conduct water continually in unusual and destructive quantities into plaintiffs' meadows. This is a mere summary indicating the character of the evidence and the nature of the conclusions upon which plaintiffs rely for a perpetual injunction.

On the other hand, the testimony of defendants' witnesses on the controverted issues is of a different import and tends to support the defense. They testified to facts tending to show: The ditch from Felts Lake will turn the water thereof into a natural, well-defined depression, runway or water-course, extending into, through and beyond the hay valleys of plaintiffs, and will not damage their meadows or crops. The cattle ranches generally in that region will be benefited by the contemplated drainage, if permitted. This plan of drainage, if carried into' effect, will turn the bed of Felts Lake into hay land. The improvement was undertaken in good faith in the interest of good husbandry. The constructive work was free from

Davis v. Beem.

·negligence.   This brief outline indicates the nature of voluminous testimony adduced by defendants.

With the evidence in hopeless conflict, the litigants requested the trial judge to visit and inspect for himself the premises involved in the controversy.   After compliance with the request, he made judicial findings in favor of plaintiffs and granted the relief sought by them.   The result of the judicial inspection inheres in the decree below and under the circumstances may properly be considered by the appellate court.   The preponderance of the evidence in the record seems to be in favor of plaintiffs.   Some features of the case appear to be free from doubt.   Felts Lake as nature created and left it was a permanent one without any surface outlet under normal conditions.   By artificial means defendants deliberately diverted water from the natural bed of Felts Lake.   This caused it to spread over the meadows in the hay valleys of plaintiffs to their damage.   It would require costly ditches to confine the escaping lake waters in a narrow channel through those meadows.   The ditches, if practicable, would require perpetual care and expense.   There is no law authorizing defendants to injure or destroy these valuable hay meadows in order to create new hay meadows of their own.   In equity there is a recognized rule that "A landowner who is not guilty of negligence may, in the interest of good husbandry, accelerate surface water in the natural course of drainage without liability to the lower proprietor," as stated in *Steiner v. Steiner*, 97 Neb. 449; but this rule by its own terms is limited to surface waters.   It does not necessarily apply to the waters. of a permanent lake having no surface outlet under normal conditions.   Upon consideration of all the evidence from every standpoint the conclusion is that the injunction was properly allowed.

AFFIRMED.