COLUMBIAN STEEL TANK COMPANY, APPELLANT, V. JOSEPH A. VOSIKA ET AL., APPELLEES.

17 N. W. 2d 488

FILED FEBRUARY 2, 1945. No. 31850.

*Stewart, Stewart & Whitworth* and *Roy W. Crimm,* for appellant.

*Perry, Van Pelt & Marti, Joseph O'Gara* and *John E. Mekota, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action by Columbian Steel Tank Company, a partnership, plaintiff and appellant, against Joseph A. Vosika, Frank H. Tavis, Trustee, and Lincoln Steel Works, a corporation, defendants and appellees. The action was to foreclose a conditional contract of sale on equipment sold to and placed in a brewery at Crete, Nebraska. Trial was had to the court at the conclusion of which a decree was rendered granting foreclosure of the contract as to a part of the equipment and denying it as to the remainder. From this decree the plaintiff has appealed. There is no cross-appeal.

The factual background of the action is substantially as follows: On August 25, 1933, the Dr. Miller Company, a corporation, was the owner of certain real estate in the city of Crete, Saline county, Nebraska, on which was located certain buildings, a portion of which had been previously used for a grain elevator and mill. The buildings were redesigned and made over into a brewery. On the said August 25, 1933, the Dr. Miller Company executed and delivered to the defendant, Frank H. Tavis, as trustee, a real estate mortgage on the real estate for $9,000. On October 5, 1933, the Dr. Miller Company, under conditional contract of sale, purchased equipment to be installed in the brewery, the agreed price of which was $10,990. After deduction of down payments there remained a balance due the plaintiff in the amount of $6,990. For this amount, in accordance with the contract, the Dr. Miller Company executed and delivered to plaintiff 12 promissory notes each for $582.50 with interest at seven per cent per annum until paid. By the terms of the contract it was agreed that title should remain in plaintiff until all payments were made, that the property should remain personal, that for failure of the Dr. Miller Company to make payment the full purchase price became due, and in that event plaintiff was empowered to take possession. This contract was filed for record November 29, 1933. A total of $5,796.96 was paid on the notes and interest. The last payment was made in August, 1939. At the time of the commencement of this action the amount remaining due and owing was $3,491.47.

In December, 1934, the Dr. Miller Company filed its petition in the United States District Court for reorganization under section 77b of the federal bankruptcy act whereupon a reorganization was effected and pursuant to the plan therein adopted certain of the payments to plaintiff were made. The details of this reorganization are not important. The reasons will become apparent later on in this opinion.

In February, 1942, the Dr. Miller Company was adjudicated to be bankrupt under the federal bankruptcy act and

in August of that year the trustee of the bankrupt sold the real estate and equipment to the defendant Vosika, subject to liens and encumbrances.

The action here is against Tavis as prior mortgagee of the real estate, Vosika as purchaser at the bankruptcy sale and Lincoln Steel Works, a corporation, mechanic's lien holder. The Lincoln Steel Works defaulted for failure to appear or answer.

The petition was for foreclosure with right to remove the property in accordance with the terms of the conditional contract of sale.

At the conclusion of the trial the court found that there was due and owing the sum of $3,735.95 and rendered a decree accordingly. It did not, however, grant foreclosure as against all of the property sold under the conditional sales contract and installed in the buildings referred to.

In their answers defendants alleged as a defense that the property against which foreclosure was sought was firmly attached to the buildings and became a part thereof and a part of the realty and that removal would irreparably damage and materially injure and weaken the buildings.

On this defense the trial court held in part in favor of plaintiff and in part in favor of defendants.

It should be pointed out here that the issue raised by this defense is the only one presented for determination on this appeal. The defendants did not cross-appeal. In fact in their brief they have asked that the decree of the district court be affirmed. The right of foreclosure of the conditional contract of sale for the balance claimed thereon was sustained, but it was decreed that by reason of the condition and character of attachment of a part of the property to the realty such part could not be removed and applied to the satisfaction of the obligation. It is only of this portion of the decree that plaintiff in truth complains.

The applicable rules of law declaring the rights of parties to secure possession of property under conditional sales contracts are the following: "Conditional sales contracts are entered into primarily for the protection of vendors of

personalty, where the parties to such contracts contemplate that the property shall retain its character as personalty. They are not intended to and cannot apply to such articles of personalty as are sold for the purpose of being incorporated into a building and becoming a part of the realty." *Geer Co. v. Wolcott,* 124 Neb. 306, 246 N. W. 456. Where the removal of property sold under a conditional sales contract with title remaining in the vendor is sought, such vendor may exercise his right of ownership and obtain possession thereof as against the owner of the real estate on which the property sold is located or against a prior real estate mortgage if such possession may be obtained and removal had without material injury to the premises. See *Frost v. Schinkel,* 121 Neb. 784, 238 N. W. 659; *Geer Co. v. Wolcott, supra; Swift Lumber & Fuel Co. v. Elwanger,* 127 Neb. 740, 256 N. W. 875. For other cases where the right of removal is dependent on the question of damage or injury to the realty, see *Arlington Mill & Elevator Co. v. Yates,* 57 Neb. 286, 77 N. W. 677; *Edwards & Bradford Lumber Co. v. Rank,* 57 Neb. 323, 77 N. W. 765; *Rothery v. Dohrse,* 122 Neb. 259, 240 N. W. 296.

By application of these rules to the evidence in this case we are called upon to determine whether or not the court erred in denying to plaintiff the right to foreclosure and possession of a portion of the property described in the conditional sales contract.

The plaintiff contends here that most of the remaining property can be removed without material injury to the realty. The defendants on the other hand contend that none of it can be so removed.

In an approach to this question a general description of the buildings and the character and qualities of certain of their components is necessary.

The first building on the premises was circular and built of hollow tile reinforced with metal rods laid between the tile, the purpose of which was to prevent spreading or separation. The building was designed for use as a grain elevator. Immediately to the east was a rectangular wooden

structure designed for use as a mill. On the east side of the wooden building was a loading platform. There was no basement under either of the buildings when erected. At or about the time of the purchase of the premises by the Dr. Miller Company the buildings were redesigned and reconstructed for use as a brewery. As part of the reconstruction, basements were excavated and walls of hollow tile built under the wooden building and at least a part of the other building. The walls were insulated and with the insulation were 19 to 20 inches in thickness. At about the same time the exterior of the wooden building was covered with stucco. The basement of the wooden building was used for the location of tanks. There were two rooms in which tanks were located. On the east side is a partition and between the two rooms is a wall 19 inches in thickness with a door in it of the width of 3 or 4 feet and a height of 6 feet. There is no other opening. In these two rooms are a number of vertical "I" beams supporting the upper floors. In the west room are 13 steel 7' x 5½' storage tanks. In the east room are 15 steel 8' x 8' storage tanks. On the first floor of the building to the east and north is a room enclosed by a wall 1 foot in thickness. In this room are two steel 7' x 5½' storage tanks. The opening into this room is a door 2' 8" wide and 6' high. On the second floor in a room are 12 steel tanks. Six are 7' x 7½' and six are 7' x 5½'. The entrance to this room is through a door 3 feet wide and 6 feet high. Extending from below the main floor to a point above is a 9' x 7' copper kettle. It rests on a platform supported by steel "I" beams.

The plaintiff urges on appeal that the court should have awarded possession of the articles thus described and located, in addition to those the possession of which was awarded. Doubtless all of them were installed at the time of reconstruction of the buildings and at that time they were enclosed as they now are found.

The witnesses are not agreed as to method of removal but from an examination of the record it appears that the following would be required for removal: To remove the

tanks from the east of the two rooms of the basement would require the making of an opening in the east basement wall of at least 8 feet in width, the removal of a section of the loading platform and the digging of a hole outside the basement wall. In order to remove the tanks from the west room in addition it would be necessary to widen the doorway between the rooms to at least 7 feet. In addition to this, to remove probably four of these it would be necessary to remove certain supporting steel "I" beams. To remove the tanks from the first floor would require the widening of the door of the partition to at least 7 feet and to make a hole in the outer wall of the same width. To remove the tanks from the second floor would necessitate making an opening at least 7 feet wide in the north or south second floor wall. It is not made clear how the copper kettle could be removed except by dismantling it and taking it out as scrap copper. In its brief plaintiff has indicated a willingness to do this as a condition of the award of possession to it of the kettle.

It will be observed that to remove the tanks would require that three large openings be made through outer walls of a thickness of from 19 to 20 inches, at least two would be required through inner walls or partitions and vertical building support would have to be removed in order that a few could be removed.

No witness has said that after removal the buildings could not be repaired. On the other hand no witness having experience in building construction has said that the making of these openings would not impair the strength of the buildings. On behalf of the defendants a contractor and builder of wide experience testified that repairs could be made so that the vertical strength would not be impaired but that the horizontal strength would be reduced.

On stipulation of the parties the trial judge made an inspection of the premises and from his observations and the evidence made findings which appear in the transcript. With respect to materiality of damage the following finding was made: " * * * and common knowledge would lead

anyone to know that the many openings in the walls and partitions necessary to take out the equipment, the cutting of 'I' beams, the removal of the concrete stairways, all would have a tendency to materially weaken the structure as it is. For the foregoing reasons I find that all of these items are fixtures."

While the mere item of costs of repair of a building occasioned by the removal of property in circumstances such as are presented in this case is not controlling, yet it appears proper to consider it for the bearing it has, if any, on the element of materiality of damage to buildings. The trial court did so consider it. In the finding the following appears: " * * * I cannot disregard the testimony of John Kerst, called by the defendant, who testified that it would cost $3,000 to $3,500 to make the openings necessary to take out the equipment and to close up the openings. While it is true that on cross-examination he was unable to give the costs of tearing down and rebuilding any one opening with any degree of certainty, I believe that after he saw the interior of that building, with the many passages, stairways and heating pipes, his general answer would be quite correct, taking into consideration the present value of labor and material."

The trial court is required to consider any competent and relevant facts revealed by a view of premises as evidence in the case, and a duty is imposed on this court on review of findings made by the trial court to give consideration to the fact that the trial court did view the premises; provided, that the record contains competent evidence to support the findings. In *Carter v. Parsons*, 136 Neb. 515, 286 N. W. 696, it is said: "As in the case of an inspection by a jury, any restrictions attempted to be imposed by an appellate court upon the effect which a trial court may give to such a view are purely artificial. Actually, it constitutes evidence, because the relevant and competent facts revealed thereby necessarily affect the mind of the trial judge and tend to produce belief or disbelief on an issue. Any other rule is psychological fiction. For this reason it may as well

squarely be declared that the trial judge is entitled to make such a view a factor in his determination of the case. It follows also that this fact is entitled to consideration and weight in examining the evidence on appeal, although, of course, the record itself must contain competent evidence to support the findings of the trial court."

In the light of all of the evidence, including that obtained by view of the trial judge, the district court found that the removal of the property described in the conditional sales contract, with the exceptions specified in the decree, would materially damage the building in which it is situated. The evidence on this question was in dispute, therefore in deciding this issue it is the duty of this court to give careful consideration to the finding of the trial court.

In *Johnson v. Erickson,* 110 Neb. 511, 194 N. W. 670, it was said: "While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." See, also, *Gentry v. Burge,* 129 Neb. 493, 261 N. W. 854.

The evidence having been considered in the light of this rule, we conclude that the decree of the district court is correct in all respects except as to the copper kettle. In the light of the declaration of intention to dismantle and take the kettle out as scrap plaintiff should be permitted to so remove it.

In one other respect there should be a change in the decree. A provision of the decree requires that plaintiff shall give a bond "to indemnify the defendants for any unnecessary damage that may be done to the freehold in the removal of said equipment; * * * ." The word "unnecessary" should be deleted from this provision of the decree. The defendants should not be required to suffer any damage to the freehold in consequence of the removal of this property.

To the extent that the decree grants relief to the plaintiff it is affirmed. To the further extent indicated herein the cause is reversed and remanded with directions to enter decree in favor of plaintiff and to modify the requirement of the indemnity bond.

AFFIRMED IN PART AND REVERSED
IN PART, WITH DIRECTIONS.