FLOYD LACKAFF ET AL., APPELLANTS, v. NELLE BOGUE ET AL., APPELLEES, ELMER L. HARLAN ET AL., INTERVENERS-APPELLEES.

62 N. W. 2d 889

Filed February 19, 1954.   No. 33379.

*Ely & Ely, Morsman, Maxwell, Fike & Sawtell,* and *Harvey D. Davis,* for appellants.

*Julius D. Cronin* and *Deutsch & Jewell,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs Lackaff brought this action seeking to enjoin defendants Bogue and Stewart from damming up or otherwise obstructing an alleged watercourse existing on and crossing Section 15, Township 28 North, Range 18 West of the 6th P. M., in Rock County. Defendants and certain interveners, all of whom owned

or leased real estate upon which the waters involved were alleged to have been wrongfully discharged by plaintiffs, filed answers and cross-petitions or petitions in intervention, fundamentally of like nature. Therein they denied generally and alleged that plaintiffs in the spring of 1949 wrongfully and without any permit from the Department of Roads and Irrigation constructed certain ditches on their own land and that of defendants Bogue in order to lower or divert the water from Cameron Lake and Linke Lake, two natural, perennial, permanant lakes, neither of which overflow except at times of rare abnormal precipitation, and each of which has an area exceeding 20 acres at low water stage; and that construction of such ditches by plaintiffs caused the waters therefrom to spread out and be diffused in a northerly and northeasterly direction upon and over defendants' and interveners' lands in a long continuous hay and cattle-raising valley, thereby causing them irreparable damage and enriching plaintiffs with additional hay meadow land. Defendants and interveners admitted that in the spring of 1949 defendants Bogue, upon request, gave plaintiffs oral permission to construct a ditch across an oxbow or horseshoe out of Linke Lake upon the land of defendants Bogue, subject, however, to the express condition, to which plaintiffs agreed, that if the water therefrom caused any damage, then plaintiffs, upon demand, would forthwith fill the ditch. It was alleged that such damage did occur in 1949, and thereafter demand was made upon plaintiffs that they close such ditch and all other ditches aforesaid, which plaintiffs failed and refused to do. It was also alleged that thereafter, during the spring of 1951, defendant Earl Stewart, with permission and direction of defendants Bogue, caused the ditch on their land to be filled, whereupon plaintiffs dynamited the fill, reopened the ditch, and commenced this action wherein defendants and interveners by their answers, cross-petitions, and petitions in intervention prayed

for money damages, an order requiring plaintiffs to forthwith fill all the ditches and keep the same filled, and that they should be perpetually enjoined from causing or permitting said waters to overflow in the manner aforesaid.

Plaintiffs' replies and answers denied generally and alleged that the natural course of drainage from Linke Lake was in a northeasterly direction in a well-defined watercourse located in a continuous hay valley, and that the said watercourse had existed for more than 30 years until filled by defendants, after which plaintiffs caused it to be reopened and restored to its normal condition. They then renewed the prayer of their petition.

At beginning of the trial it was agreed by all parties that all questions pertaining to an injunction and issues in connection therewith should be first finally determined by the trial court or on appeal therefrom, before any evidence would be submitted upon the question of the right to recover money damages sought by defendants and interveners. Therefore, the trial court retained jurisdiction of the cause for subsequent trial and determination of the claims of defendants and interveners for money damages should it be ultimately found that they were entitled to injunctive relief.

After trial as aforesaid, whereat voluminous oral evidence was adduced and numerous exhibits, including some pleadings and orders in another cause, leases, blueprints, maps, atlases, and ordinary and aerial photographs, had been offered and received in evidence, the trial court "made a personal inspection of the lands of the East Cameron Lake or Cameron Slough and Linke Lake basins, and the drainage ditches involved in the above cause, together with a part of the area over which the drainage from said lakes flowed by reason of such ditches" and rendered a judgment, finding and adjudging the issues generally against plaintiffs and each of them upon their petition and for defendants and interveners upon their respective answers, cross-petitions,

and petitions in intervention. Insofar as important here, the judgment ordered and directed plaintiffs to forthwith fill and keep filled to the height of the natural ground adjacent thereto each and every one of the ditches constructed by them about which defendants and interveners complained. It forever enjoined plaintiffs and each of them and all persons acting by direction or under them or either of them from attempting to drain either of said lakes and ordered that plaintiffs and their successors in title and the described land owned by plaintiffs should be charged with performance of or compliance with the decree.

Subsequently, at the insistence of plaintiffs, the trial court vacated the judgment and rendered another one, new in form but alike in result, except that it forever enjoined plaintiffs and each of them as aforesaid, without providing that plaintiffs and their successors in title or the described land owned by plaintiffs should be charged with performance or compliance with the judgment.

The trial court subsequently overruled defendants' and interveners' motion to amend and enlarge the judgment to include such provisions aforesaid as were omitted from the second judgment, and overruled plaintiffs' motion for new trial. Plaintiffs appealed, assigning some 13 errors, the effect of which was to substantially claim: (1) That the trial court erred in failing to strike the cross-petitions of defendants and the petitions in intervention; and (2) that the findings and judgment of the trial court were not sustained by the evidence but were contrary thereto and contrary to law. We conclude that the assignments have no merit.

Defendants and interveners cross-appealed, assigning substantially that the trial court erred in overruling their motion to amend and enlarge the second judgment. We conclude that such assignment should not be sustained.

For clarity and convenience we first dispose of the

cross-appeal. In doing so, we are not required to discuss or decide whether or not the trial court had the power to so amend and enlarge its last judgment. That is true because in our view the judgment is, for all practical purposes, as effective without the amendment desired by defendants and interveners as it would be if included. In Ahlers v. Thomas, 24 Nev. 407, 56 P. 93, wherein defendants were enjoined from diverting water from a stream, appropriate language was used which has application here. In that opinion it was said: "The general rule is that judgments are binding only upon parties, but there are exceptions as in the case of privies.

" 'When a judgment has been rendered between the parties, they are bound by it; and, to give full effect to the principle by which the parties are held bound by it, all persons who are represented by the parties, and claim under them, or are privy to them, are equally concluded by the same proceedings. By "privity" is meant the mutual or successive relationship to the rights of property; and privies are classified according to the manner of this relationship. * * * The reason why persons standing in this relation to the litigating party are bound by the proceedings to which he is a party is that they are identified with him in interest; and, whenever this identity exists, all are alike concluded. Privies are therefore estopped from litigating that which is conclusive upon him with whom they are in privity.' (3 Bouvier's Institutes, p. 373-4.)"

As stated in State ex rel. Knittle v. Will, 86 Kan. 561, 121 P. 362: "An injunction against the owner of property is not only binding upon him but also upon those who may take or hold under him. It is, in one sense, an incumbrance on the property, and the owner who has been enjoined can not, by transferring it to another, by grant, lease or otherwise, free it from the limitation imposed by the injunction. (The State v. Porter, 76 Kan. 411, 91 Pac. 1073.)" Defendants and interveners also assigned in their cross-appeal that the trial court

erred in refusing to amend and enlarge its judgment in another respect, but such assignment was not argued in the brief and will not be discussed.

We turn then to a discussion of plaintiffs' contentions. In that connection, they cited no authority and made no argument upon the first assignment except to say that the trial "court was clearly in error in allowing the issue of Cameron slough or any of the intervenors to come into this case." In that connection, the record discloses competent evidence that the ditches wrongfully constructed by plaintiffs first brought the waters from Cameron slough, hereinafter called East Cameron Lake, in a northerly and northeasterly direction over the lands of defendants Bogue, thence into Linke Lake, thence therefrom over the lands of defendants and interveners located on down the valley, all of whom were allegedly damaged thereby. The issue of East Cameron Lake was thus properly brought into the case by defendants and interveners who claimed to have and did have an interest in the matter in litigation, and who had a right to intervene and unite with defendants in resisting plaintiffs' claims. Following section 25-328, R. R. S. 1943, are annotated many cases sustaining that conclusion. They are too numerous to cite here.

We turn then to the second assignment, and in doing so examine the record in the light of language appearing in Jack v. Teegarden, 151 Neb. 309, 37 N. W. 2d 387, where we said: "Applicable here is the following from Probert v. Grint, 148 Neb. 666, 28 N. W. 2d 548: ' "When an action in equity is appealed, it is the duty of this court to try the issues de novo and to reach an independent conclusion without reference to the findings of the district court. Comp. St. 1929, § 20-1925 (this section being now 25-1925, R. S. 1943). But in a case wherein the trial court has made a personal examination of the physical facts, and where, in the same case, the oral evidence in respect of material issues is so conflicting that it cannot be reconciled, this court

will consider the fact that such examination was made and that such court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." City of Wilber v. Bednar, 123 Neb. 324, 242 N. W. 644. See, also, State v. Delaware-Hickman Ditch Co., 114 Neb. 806, 210 N. W. 279; Greusel v. Payne, 107 Neb. 84, 185 N. W. 336.

" ' "The trial court is required to consider any competent and relevant facts revealed by a view of premises as evidence in the case, and a duty is imposed on this court on review of findings made by the trial court to give consideration to the fact that the trial court did view the premises; provided, that the record contains competent evidence to support the findings." Columbian Steel Tank Co. v. Vosika, 145 Neb. 541, 17 N. W. 2d 488.' See Carter v. Parsons, 136 Neb. 515, 286 N. W. 696."

Insofar as important here, the record discloses that plaintiffs as joint tenants owned described lands in Sections 21, 22, 28, and 15, in Township 28 North, Range 18 West of the 6th P. M., in Rock County. Defendant Nelle Bogue owned all of Section 23, and a part of Sections 11, 14, 15, and 22 in the same township and range. Defendant Earl Stewart was the owner of the northeast quarter of Section 20 in Township 29, and was a tenant of his mother in possession of described lands located in Township 29 some distance northeast down the valley from that owned by plaintiffs and defendants Bogue. The lands owned or leased by interveners lie along the valley between plaintiffs and defendants Stewart and Bogue.

Linke Lake is a natural perennial or permanent lake located largely in Section 15. It is fed by surface waters and the overflow waters, if any, in times of rare abnormal precipitation from East Cameron Lake, which in turn is fed by waters from Cameron Lake. Both of such latter lakes are fed by surface waters and are con-

nected by a culvert or passageway. They are located at a higher level south of Linke Lake on Sections 21, 22, 23, and 28. Concededly defendants Bogue are owners of land riparian to and owners of a portion of the beds of both East Cameron Lake and Linke Lake. East Cameron Lake is also a natural perennial or permanent lake which with the ditches operating at time of trial had an open water area of 96.9 acres with a depth of at least 5 feet. Linke Lake with the ditches operating at time of trial had an open water area of 119.1 acres with a depth of more than 6 feet.

There is a natural rim around each of said lakes and neither has a natural surface outlet under normal conditions, and except for abnormal precipitation at rare intervals neither of them is subject to overflow. In 1919 or 1920 the natural rim of East Cameron Lake was lowered by a shallow spaded ditch which to a certain extent accelerated overflow therefrom into Linke Lake during periods of rare abnormal precipitation. However, there is no natural well-defined watercourse, depression, or draw between the two lakes, and when there was an overflow from East Cameron Lake, the water spread out over meadows which generally sloped toward Linke Lake, thence into such lake. Eventually, many years ago, as early as 1929 at least, the natural rim of East Cameron Lake filled up again with blow sand and dirt as also did the spaded ditch which grassed over and was abandoned.

At the northeast corner of Linke Lake is a natural depression, draw, or watercourse containing what is described as an oxbow or horseshoe, thence extending several miles northeast into the Elkhorn River. In 1919 or 1920, a ditch was dug from such lake across the base of the oxbow by plaintiffs and one O'Brien, who then owned the Bogue lands involved here. Subsequently, however, during 1927 to 1930, plaintiff Floyd Lackaff owned such lands as well as that now jointly owned by plaintiffs. In that connection, such ditch

was filled up with blow sand and dirt to a depth of only 8 to 10 inches and grassed over, so that for many years no water passed through it and a car could readily drive over it. Clearly it was abandoned as early as 1929.

In 1949, with knowledge and permission of defendants Bogue, but upon the agreed condition that it would be filled by plaintiffs upon demand if damage resulted from it, plaintiffs excavated the rim of Linke Lake, reopened the old ditch, and constructed a new ditch across the base of the oxbow to a depth of about 3.1 feet below the flow line of the oxbow or horseshoe around which no water had flowed for more than 20 years prior to 1949. In 1949 plaintiffs also, without any permission, excavated the rim of East Cameron Lake at the northeast corner thereof, reopened the old ditch, and constructed new ditches therefrom north to and around defendant Bogue's fence corner and on west to a blowout, thence north again to a slough where the ditch ended. Such ditches caused the water from East Cameron Lake to thus flow and be diffused over the lands of defendants Bogue and into Linke Lake, thence north across the valley. For many years a road used by the public ran along the northerly rim of East Cameron Lake and except in the 1890s and during 1915 to 1920, no one ever saw water flow over such northerly rim. The evidence establishes that such ditches constructed by plaintiffs caused water in volume to be continuously discharged out of such lakes away from plaintiffs' land into the hay valley extending in a northerly and easterly direction upon and over the property of defendants and interveners, from which they sustained irreparable injury. When such damages occurred, defendants Bogue demanded that plaintiffs fill up the ditches and they promised to take care of the same, but failed and refused to do so. Thereafter defendant Stewart, with permission and direction of defendants Bogue, filled up the oxbow ditch for about 125 feet on lands owned by them, whereupon plaintiffs dynamited the fill and

brought this action. We conclude that the evidence was amply sufficient to sustain the judgment unless, as claimed by plaintiffs, they had a lawful right to so construct and maintain the ditches.

The only question left then is whether or not the judgment was contrary to law. We conclude that it was not. Plaintiffs argued that even if they were entirely at fault, still defendants and interveners have not shown their right to mandatory injunctive relief against plaintiffs. In that connection plaintiffs first argued that they did only what they had a right to do, in effect that they had a permissive easement since 1919 or 1920, and that in 1949 in any event defendants Bogue, at request of plaintiffs, consented to a reconstruction of the oxbow ditch and thus neither defendants nor interveners could obtain an injunction. The answer with regard to 1919 or 1920 is twofold. First, if plaintiffs had an easement it was extinguished by merger of title without any subsequent reservation thereof. See, 28 C. J. S., Easements, § 57, p. 720; 19 C. J., Easements, § 156, p. 945. Again, if plaintiffs had an easement it was entirely abandoned many years ago by them. This intent to abandon was established by many years of non-use, natural obliteration, and subsequent request for renewal thereof. See, 28 C. J. S., Easements, § 58, p. 722; 19 C. J., Easements, § 149, p. 940. With regard to 1949, assuming that a permissive easement was given by defendants Bogue, it was dependent upon an agreed condition that it could continue only so long as no damage arose therefrom, but if damage accrued because thereof, the right would cease. Damages evidently did occur, the condition ceased to exist, and plaintiffs' rights were thereby extinguished by agreement. 28 C. J. S., Easements, § 65, p. 732; 19 C. J., Easements, § 155, p. 944. In that connection, the general rule is that when an easement has been extinguished it cannot ipso facto be revived. 28 C. J. S., Easements, § 66, p. 733. In any event, we have said in Bussell v. McClellan, 155 Neb.

875, 54 N. W. 2d 81: "Of course what one could not legally do a group could not in concert legally do." In other words, neither plaintiffs nor defendants Bogue nor all of them could agree to violate the law and thereby flood and damage the lands of lower owners in such a case as that at bar.

Plaintiffs also contended that defendants and interveners failed to establish that their damage was caused by construction of the ditches herein, as distinguished from drainage flowing out of other claimed watercourses and from abnormal precipitation of rain and snow. Such contention may have some relation to the ability of defendants and interveners to subsequently recover dollar damages but it is not controlling upon the issues of injunction here presented where there is competent evidence that plaintiffs' ditches wrongfully and continuously drained water over their lands. Applicable language appears in Faught v. Platte Valley Public Power & Irr. Dist., 147 Neb. 1032, 25 N. W. 2d 889, where it is said: "We have said in Gering Irrigation District v. Mitchell Irrigation District, 141 Neb. 344, 3 N. W. 2d 566: '* * * a party seeking an injunction must establish by competent evidence every controverted fact necessary to entitle it to relief, an injunction will not lie unless the right is clear, the damage is irreparable and the remedy at law is inadequate to prevent a failure of justice.'

" 'Ordinarily, to warrant injunctive relief, it must clearly appear that some act has been done, or is threatened, which will produce irreparable injury to the party asking for such relief.' 43 C. J. S., Injunctions, § 23a, p. 446.

" 'Acts which destroy or result in a serious change of property either physically or in the character in which it has been held or enjoyed have been held to do an irreparable injury.' 43 C. J. S., Injunctions, § 23b (2), p. 448.

" 'As a general rule, where an injury committed by one against another is continuous or is being constantly

repeated, so that complainant's remedy at law requires the bringing of successive actions, that remedy is inadequate and the injury will be prevented by injunction. The fact that an injured person has the right of successive actions for the continuance of the wrong does not make it an adequate remedy at law which bars the jurisdiction of a court of equity to grant an injunction to restrain the continuance of the injury.' 43 C. J. S., Injunctions, § 24a, p. 449.

"As stated in Hackney v. McIninch, 79 Neb. 128, 112 N. W. 296: 'It is now well settled that injunction is a proper remedy, particularly when, as in this case, the injury is of a continuous nature and committed under a claim which indicates a continuance or frequent and constant repetition of it. Courts of equity take cognizance of these cases to prevent the vexation and harassment of continued disturbances, prevent a multiplicity of suits, and to preserve the right by restraining the commission and repetition of threatened injury. Pohlman v. Trinity Church, 60 Neb. 364; Carroll v. Campbell, 108 Mo. 550.' See, also, Hagadone v. Dawson County Irrigation Co., 136 Neb. 258, 285 N. W. 600; Mooney v. Drainage District, 126 Neb. 219, 252 N. W. 910."

As early as Davis v. Londgreen, 8 Neb. 43, this court held: "In such cases equity looks to the nature of the injury inflicted, together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as the ground of affording relief." Plaintiffs' contentions have no merit.

Plaintiffs contended that, under the facts established here, they had an absolute right in the interest of good husbandry to maintain the ditches regardless of the effect upon the lands of defendants and interveners. We conclude otherwise.

In that connection, plaintiffs, without prior approval of the Department of Roads and Irrigation, rely upon section 31-201, R. R. S. 1943, and authorities dealing with situations involving surface waters and temporary

sloughs, basins, or ponds where by ditches constructed wholly on the owners' land, such waters are caused to flow into natural watercourses or into natural depressions or draws on the owners' land, whereby such water may be carried into some natural watercourse, which are entirely distinguishable from the situation presented in the case at bar. Surface waters comprehend waters from rains, springs, or melting snows which lie or flow on the surface of the earth but which do not form part of a watercourse or lake. Restatement, Torts, § 846, p. 333; Krueger v. Crystal Lake Co., 111 Neb. 724, 197 N. W. 675; Morrissey v. Chicago, B. & Q. R. R. Co., 38 Neb. 406, 56 N. W. 946; Jack v. Teegarden, *supra*. As stated in 67 C. J., Waters, § 286, p. 863: "Surface waters cease to be such when they empty into and become part of a natural stream or lake, but they do not lose their character as such by reason of their flowing from the land on which they first make their appearance onto lower land in obedience to the law of gravity, or by flowing into a natural basin from which they normally disappear through evaporation or percolation, * * *." See, also, 56 Am. Jur., Waters, § 65, p. 547. Numerous cases will be found cited in Nebraska Law Bulletin, Vol. 6, p. 201, pointing out the distinctions here involved. The statutes and rules relied upon by plaintiffs have no controlling application here.

In Bussell v. McClellan, *supra*, speaking of section 31-201, R. R. S. 1943, this court said: "The section clearly means as it clearly says that in order that there shall be no liability in damages for the construction of a ditch or drain such as is authorized by the statute the ditch or drain must be 'wholly' on the owner's land and the water collected therein must be discharged in a natural watercourse or natural depression or draw on the owner's land." See, also, Rudolf v. Atkinson, 156 Neb. 804, 58 N. W. 2d 216.

As recently as Lackaff v. Department of Roads and Irrigation, 153 Neb. 217, 43 N. W. 2d 576, which involved

at least one of these same plaintiffs but a different permanent lake, plaintiffs contended that they were entitled, by virtue of section 31-201, R. R. S. 1943, to reconstruct another abandoned drainage ditch from such lake into a watercourse. This court, in sustaining a denial of that right, said: "It is apparent that section 31-201 is a general law dealing generally with drainage by landowners. Sections 81-702 and 81-705 deal with a specific subject, the drainage of natural lakes covering an area in excess of 20 acres at low water stage. Specific statutory provisions relating to a particular subject control over general provisions. Canada v. State, 148 Neb. 115, 26 N. W. 2d 509."

In Beem v. Davis, 111 Neb. 96, 195 N. W. 948, this court, referring to sections 8480 to 8486, Comp. St. 1922, now sections 81-702 to 81-708, inclusive, R. R. S. 1943, said: "The drainage and reclamation of swamps or ponds is a matter advantageous to the state and the public at large. Todd v. York County, 72 Neb. 207; Aldritt v. Fleischauer, 74 Neb. 66. On the other hand, the preservation of large bodies of water which form refuges for wild fowl and afford places for sport and recreation is also a matter of public concern. This has been recognized by the legislature in the enactment of sections 8480-8486, Comp. St. 1922. If it is desired to drain natural or perennial lakes, exceeding 20 acres in extent at low water, application must be made to the department of public works for a permit to do so. If the permit is refused the applicant may appeal to the district court. If the body of water is not a natural or perennial lake, and defendants herein are only slightly damaged by its drainage through a natural waterway, as alleged, the rule in Todd v. York County and Aldritt v. Fleischauer, *supra,* applies, and the owner may drain into a natural waterway upon his own land, using reasonable care not to damage the lower lands. But, if the lake belongs in the other category, then the injunction should be allowed, because plaintiffs have not applied

for a permit to drain it as the statute requires. This question is one of fact which must be determined from evidence."

In Davis v. Beem, 115 Neb. 697, 214 N. W. 633, this court held: "The principle that 'A landowner who is not guilty of negligence may, in the interest of good husbandry, accelerate surface water in the natural course of drainage without liability to the lower proprietor,' held inapplicable to the waters of a permanent lake on a cattle ranch in a semi-arid region.

"The draining of a lake through a cattle ranch over objections of an owner who would suffer recurring damages by the drainage, held properly prevented by injunction under the evidence outlined in the opinion."

In the opinion it was appropriately said: "There is no law authorizing defendants to injure or destroy these valuable hay meadows in order to create new hay meadows of their own. In equity there is a recognized rule that 'A landowner who is not guilty of negligence may, in the interest of good husbandry, accelerate surface water in the natural course of drainage without liability to the lower proprietor,' as stated in Steiner v. Steiner, 97 Neb. 449; but this rule by its own terms is limited to surface waters. It does not necessarily apply to the waters of a permanent lake having no surface outlet under normal conditions."

In Graham v. Pantel Realty Co., 114 Neb. 397, 207 N. W. 680, this court held: "Where water is impounded upon land by natural conditions whereby a lake is formed, the owner of such land has no lawful right to remove an impediment to its flowage and thereby cause such water to flow upon the land of another to his damage. For such injury injunction is a proper remedy and an injured party may recover such damages in the same action as he may have sustained by such wrongful act."

In the opinion it was said: "Certain it is that an upper proprietor cannot lawfully cut away the rim of

the banks, which incloses a body of standing water on his land, and by the installation of a system of ditches, thereby discharge such water over and upon the lower lands of his neighbor to his injury. This constitutes a nuisance for which the trespasser may be enjoined. And, besides, he may be held in the same suit, to make good for such damages as he may have so unlawfully occasioned." See, also, Warner v. Berggren, 122 Neb. 86, 239 N. W. 473; Rudolf v. Atkinson, *supra*.

Likewise, in Yocum v. Labertew, 145 Neb. 120, 15 N. W. 2d 384, this court, citing and quoting from like cases, held: "Where water is impounded upon land by natural conditions whereby a lake is formed, the owner of such land has no lawful right to remove an impediment to its flowage and thereby cause such water to flow upon the land of another to his damage.

"For such an injury injunction is the proper remedy, and equity looks to the nature of the injury inflicted, together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as the ground of affording relief."

We have been unable to find any authority and none has been cited by plaintiffs which could sustain their contentions. For the reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to plaintiffs.

AFFIRMED.