JOHN J. KANE ET AL., APPELLANTS, V. WALTER F. BOWDEN, APPELLEE.

FILED NOVEMBER 9, 1909.   No. 15,804.

1. **Waters, Diversion of.** Water flowing in a well-defined watercourse, whether swale or creek in its primitive condition, may not, except in the exercise of the power of eminent domain, lawfully be diverted and cast upon lands of an adjoining proprietor where it was not wont to run according to natural drainage.

2. ————: Rights of Adjoining Landowner. A person may not, except in the exercise of the power of eminent domain, lawfully concentrate surface waters and discharge them through an artificial ditch in unusual quantities upon lands of an adjacent owner to his damage.

Appeal from the district court for Cuming county: Guy T. Graves, Judge. *Reversed with directions.*

*A. R. Oleson*, for appellants.

*Hunker & Krake, contra.*

Root, J.

This is an action to enjoin the overflow of plaintiffs' lands. Defendant prevailed, and plaintiffs appeal.

· Plaintiff Thompson owns land in the north half of the southwest quarter of section 33. Defendant owns all of the north half of said section. Plaintiff Kane owns the northeast quarter of the southeast quarter of section 32. All of this land is flat, and situated in the valley of, and close to, the Elkhorn river. Sand creek, a natural watercourse draining considerable territory, runs in a general southeast course with well-defined banks until it crosses the north line of said section 32 about midway between the northeast and northwest corners thereof. At this point the banks disappear, and the flowing water spreads out, but proceeds in a general southeast and easterly course through a shallow swale, thence northeast for a space, and thence southeast until it empties into the Elkhorn. At about the center of section 33 the banks of the stream reappear and continue to the mouth of the creek. In the north half of section 32 there is a pond about one-half mile in length and one-sixth of that distance in width. In dry seasons water ceases to flow in Sand creek, but after heavy rains flood waters overflow the land south of the swale referred to, and fill said pond. It clearly appears from the evidence that water flows over the bank near the northeast shore of the pond and into the swale. After excessive rains, or coincident with high water in the Elkhorn, all

of the land is submerged, but the greater part thereof is valuable pasture and hay land. During the past 20 years many attempts have been made to drain the lands herein described. Ditches have been constructed east and west and southeast and then east, but the proof establishes that all of them, except the Mansfield ditch and the drain in dispute, are filled with flood trash and silt, and for all useful purposes are obliterated. Some time in the early part of 1906, the exact date not appearing in the record, Mr. Mansfield, who owns the north fourth of section 32 and a considerable part of section 29, and Mr. Spoering, who owns the northwest quarter of the northeast quarter of section 32, constructed a ditch in the swale above referred to. The path of this drain is southeast to a point in the north line of the northwest quarter of the northeast quarter of section 32, and thence continues eastward to the section line. In June, 1906, defendant commenced to dig a ditch from the last named point directly south. Plaintiffs warned him not to proceed, but he completed the ditch to the half section line, banked the excavated soil on the east side of the channel, and constructed a dam across the eastern end of the Mansfield ditch. The greater part of the water in the Mansfield ditch was thereby diverted from its eastern and northeastern course south into the ditch constructed by defendant, and thence over and across plaintiffs' lands. The evidence establishes that this water destroyed tame grass and blue stem that theretofore grew luxuriantly upon plaintiffs' lands, interfered with hay making, and seriously damaged said litigants. The instant case is within the principles announced in *Roe v. Howard County*, 75 Neb. 448, and *Gregory v. Bush*, 64 Mich. 37. That is to say, that water flowing in a well-defined watercourse cannot be lawfully diverted and cast upon the lands of an adjoining proprietor where it was not wont to run in the course of natural drainage, and that a person may not lawfully concentrate surface water and discharge it through an artificial ditch in unusual quantities upon lands of an adjacent owner to his damage.

Defendant argues that the maps in evidence, prepared by the county surveyor, demonstrate that the natural drainage of the territory referred to is southeast; that the Mansfield ditch diverted water east to and across defendant's farm, and that the drain in question merely returned such water to the territory where it would have appeared but for the former ditch. The maps were prepared from surveys taken while part of the territory was covered with ice, and the elevations indicate the surface of the ice or of the ground according to conditions existing at that time. The elevation of the north shore of the pond, where the overwhelming preponderance of the evidence establishes that water did escape and flow east and northeast into the swale and over defendant's land, is not indicated on the maps. It is quite probable that the Mansfield ditch and the earth taken therefrom intercept water that otherwise would spread out and flow south, and that said drain accelerates the flow of water eastward to defendant's farm, but plaintiffs are not responsible for that condition. The fact that Mansfield and his associates are unlawfully diverting water to and over defendant's land will not justify him in deflecting and pouring it onto plaintiffs' farms.

It is suggested that plaintiffs' petition refers to a dyke and an embankment, but is silent concerning the ditch; that the north and south ditch, and not the embankment, diverts water from the Mansfield ditch; that the allegations in the petition and the evidence adduced do not correspond, and therefore plaintiffs are not entitled to a judgment in this case. A dyke in ordinary language refers to a ditch or channel dug for water as well as to a bank, mound or wall. The allegation is sufficient.

A careful consideration of the record convinces us that plaintiffs are entitled to relief. The judgment of the district court is reversed and the cause remanded, with directions to enter a judgment as prayed for in plaintiffs' petition.

                                        REVERSED.