DAVID NORRIS, APPELLEE, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED JANUARY 15, 1924. No. 22639.

1. **Waters:** SURFACE WATERS. Surface water is deemed the common enemy, and the landowner may repel it even to the damage of his neighbor, if the means employed by him be not negligent. But he may not be negligent in the use of means, and he may not lawfully gather even surface water in a body and cast it upon his neighbor, to the latter's damage.

2. ———: DIVERSION. One who permits a second party to divert a continuously flowing stream of water from its natural course and cast it upon his land cannot in turn cast it upon the land of a lower proprietor by means of a ditch which he has a prescriptive right to use for the purpose only of draining spring and flood waters naturally falling or flowing upon his land.

Norris v. Union P. R. Co.

3. Appeal: INSTRUCTIONS: HARMLESS ERROR. This court will not reverse because of instructions which are erroneous, but not prejudicially so. *Held*, in this case, that the error of the trial court in instructing the jury, if any, was not prejudicial, and therefore not reversible error.

APPEAL from the district court for Lincoln county: J. LEONARD TEWELL, JUDGE. *Affirmed.*

C. A. Magaw, Thomas F. Hamer and Thomas W. Bockes, for appellant.

E. H. Evans, contra.

Heard before MORRISSEY, C. J., LETTON, ROSE and GOOD, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

In the eighties the Union Pacific Railroad Company dug a ditch south of its track, extending from its borrow pits to a natural waterway which meandered through plaintiff's land or leasehold. This ditch passed the plaintiff's leasehold on the west and was constructed to take care of spring and storm water coming down on the south side of the track. There seems to be no doubt that the company acquired a prescriptive right to have and maintain it for that purpose. Nor did it damage the plaintiff or bring any protest from him so long as it was maintained for that purpose; for the spring water was comparatively little in quantity, and the storm water came down in the spring time and did not interfere with plaintiff's use of his land for raising and making hay. And, as a matter of fact, up to 1914 the ditch steadily filled up, partially with growing trees and partially with earth and rubbish.

On the other or north side of the company's tracks were the Pawnee springs, flowing a great deal of water the year around, which water naturally went to the east in a swale or draw to a point some distance past the land of the plaintiff. But in 1907, or thereabout, certain interested persons on that side who wished to get rid of such water constructed

a waterway, called the "Bull ditch," leading this spring water out of its natural course to a culvert under the company's track some 700 feet west of the company's ditch, above described. Passing through said culvert, the body of this north-side water went east in the borrow pits along the south side of the track. This brought a considerable continuously flowing body of water to the lip of the said company ditch, but, because it had filled up, as aforesaid, the water flowed on a mile to the east and plagued the little town of Maxwell. The town protested, and the company in 1914 cleaned out and enlarged said company ditch, whereby the water from the Pawnee springs no longer vexed the town, but, entering the mouth of said ditch and flowing thence to plaintiff's leasehold, was discharged upon the latter's hay lands, to their great damage.

This was the basis of plaintiff's suit. Appropriate pleadings were filed in the district court, and upon trial plaintiff recovered a judgment against the defendant for $583.62.

Three assignments of error are presented in the brief of the appellant: First, that the evidence was not sufficient to sustain the judgment; second, that the court erred in giving its fifth instruction; and, third, that the verdict and judgment are contrary to the instructions of the court.

Upon examination of the briefs and record, it becomes apparent that the case turns upon the question of law involved in the giving of said instruction five in conjunction with the instruction following—instruction six. The latter is as follows:

" You are instructed that the law does not make it the duty of the defendant to do anything with such water as may have been unlawfully diverted upon its right of way by some other persons, from the so-called 'Bull ditch.' The defendant may allow such water to flow as it would flow if defendant did nothing. The defendant also had the right to maintain the ditch along the west side of plaintiff's premises, it having been there for such a period of time as to give the defendant a right by prescription to maintain the same and having been erected long prior to the so-called

'Bull ditch.' If you believe from the evidence that 'he erection of the so-called 'Bull ditch' by third persons was the proximate cause of the damage to the plaintiff's crops, rather than an enlargement of the ditch along the west side of plaintiff's premises by the defendant, then you will find for the defendant. The defendant had the right to clean out and maintain said ditch along the west side of plaintiff's premises."

The former, so far as pertinent to the question, reads:

" That defendant, by and on account of cleaning out and enlarging the ditch which flows along the west side of plaintiff's leased premises, so increased the flow of water in said ditch along the west side of plaintiff's premises, that the leasehold and crops of the plaintiff were damaged to an extent greater than they would have been damaged had not such increased flow been brought about by said cleaning and enlarging."

The complaint of the defendant company, appellant in this court, is that the instruction is prejudicially erroneous, in that it charges the defendant with the consequences of cleaning out the ditch, though by instruction six the jury were told that it was lawful for it to do so; in other words, in that it in substance charges as unlawful what was said to be lawful in the next instruction.

This would seem to be true at first blush. But it is to be remembered that this is not a case of fighting surface water, as many of the cases cited by the defendant are. In such cases the landowner may repel the enemy even to the damage of his neighbor, if the means employed by him be not negligent. But in the case at bar the defendant permitted the north-side owners to divert a continuously running stream from a swale, wherein it was naturally flowing past the plaintiff's leasehold on the north side of the track, to its borrow pits on the south side. And then it proceeded to cast such diverted water upon the plaintiff's land by opening and enlarging the ditch in controversy. The railroad company was thus guilty of an unlawful act for which it is not to be excused because the north-side owners were first guilty of

an act equally unlawful. Except in the exercise of the power of eminent domain, water flowing in a well-defined water-course, whether swale or creek, in its primitive condition, may not be lawfully diverted to the lands of an adjoining proprietor where it was not wont to run according to natural drainage. *Kane v. Bowden*, 85 Neb. 347. This is a case very much in point. The owner dug a ditch and turned water upon his neighbor, and the latter dug another, casting such water upon the land of the plaintiff. The court said, in substance, that the fact that the constructor of the first ditch was unlawfully diverting water to the defendant's land would not justify him in deflecting said water to plaintiff's land. And it cited *Roe v. Howard County*, 75 Neb. 448, 456, in which the rule was announced as follows: " The rule relating to gathering of surface water in a ditch and discharging it in a volume on the lands of another has been well settled in this state. While one may fight surface water and protect his premises against it by the use of reasonable means, he cannot collect it in a large body and flow it onto the land of a lower proprietor to his injury."

The defendant claims to have had a prescriptive right to open and enlarge its ditch, or at least to clean the same out. It may have had such a right for the purpose of caring for spring and flood waters coming down on the south side of the railroad track; but not for the purpose of caring for a stream of water unlawfully diverted from its natural course on the north side and unlawfully cast upon the defendant. A right by prescription attaches only to the use originally enjoyed, and does not extend to a use of different character, or to one of the same character requiring greater room. "A prescriptive right is not enlarged by an enlarged use during the period of prescription enjoyed by those who claim it, but is measured by the extent of the use at the commencement of the period." *Behnisch v Cedarburg Dairy Co.,* 180 Wis. 34. And, as the appellee logically argues, it is perfectly plain that an enlarged use, such as is contended for in the instant case, stands in exactly the same legal status as an attempted user for a definite and distinct purpose, be-

cause a certain use may not be an annoyance, but any enlargement may be such in proportion to the enlargement.

The contention of the defendant is that it was incumbent upon the plaintiff, in order that a recovery might be had upon the petition, to prove the particular damage resulting from the enlargement. There is no question that the ditch was not only opened, but considerably enlarged. In effect this is answered, we think, by what has been said in the preceding paragraphs. The defendant had a right to use the original ditch to carry away surface water. After a lapse of years it cleaned out and enlarged said ditch, not to make it a drain for surface waters, but to make it a bed for a river. In a small degree this is exactly what was accomplished by the act of the defendant.

It appears from the evidence beyond dispute that before this was done plaintiff was able to make hay upon his land profitably and comfortably. Then he could go straight to town across his land. Afterward, much of his hay land was destroyed, and he had to go three miles around to town. There is no doubt in the mind of this court that the verdict was according to law, and that the evidence fully sustains the same.

It appears that the two instructions referred to are in part conflicting, and that the same may have been somewhat confusing to the jury. But the conflict and the confusion, if any, were certainly to the prejudice of the plaintiff, rather than to that of the defendant. There may have been error in the instructions in the form in which they were given, but, if there was, it was not prejudicial.

There being no prejudicial error in the record, we are of opinion that the judgment of the lower court should be affirmed, and it is so ordered.

AFFIRMED.