CHARLES J. LEADERS, APPELLANT, V. SARPY COUNTY ET AL., APPELLEES.

279 N. W. 809

FILED MAY 27, 1938. No. 30317.

*Ziegler, Dunn & Becker* and *D. L. Manoli,* for appellant.

*Nickerson & Nickerson* and *William R. Patrick, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

In this case the plaintiff seeks to enjoin the defendant Sarpy county and others from erecting or maintaining a dam across a road ditch north of plaintiff's land and from obstructing the westerly flow of water in said ditch from the lands to the north of it. The defendants by their answer and cross-petition allege that the natural and primitive course of drainage is across the road and through plaintiff's land; that plaintiff has constructed and now maintains a dam in the natural watercourse at the north edge of his land; and defendants ask for a mandatory injunction to compel its removal and for an order permanently restraining plaintiff from constructing or maintaining any obstruction to the flow of waters through the natural drainage course passing over plaintiff's lands. The trial court dismissed plaintiff's suit, and entered an order compelling plaintiff to remove the dam constructed by him in the natural drainage course and enjoined the construction or maintenance of any obstruction in the natural drainage course as prayed by the defendants. From this order, plaintiff appeals.

The evidence shows that plaintiff was the owner of the northwest quarter of section 12, township 13, range 12 east, in Sarpy county, and that he was the lessee from his father, August Leaders, of the northeast quarter of said section. North of this land, running east and west, was an improved state highway. Across the highway north of plaintiff's land is a quarter-section known as the Lienemann land, and north of the August Leaders land is a quarter-section known as the Vierregger land. It appears that the Vierregger lands naturally drained to the southwest and that the natural and primitive course of drainage was through a flat draw running from these lands in a southwesterly direction across the highway onto the August Leaders land. After entering the August Leaders land, the draw ran southwest for a short distance and then turned almost straight west onto plaintiff's land. On entering plaintiff's land, the draw followed a northwesterly course

until it reached a point very close to the highway where it turned south toward the Platte river. At a point 700 feet west of the place where the highway bridge across the draw was located, a tube culvert was constructed which permitted the drainage waters from the Lienemann land to cross the highway and enter the draw which approached close to the highway at that point. It also appears that a ditch had been constructed along the north side of the highway between the bridge across the draw and the tube to the west of it. The origin, maintenance and use of this ditch is directly involved in this suit, the plaintiff asking that the county be enjoined from damming it up or permitting it to become closed up. Immediately south of the bridge and upon his leased land, plaintiff has constructed a concrete wall and levee for the purpose of forcing the water from the draw, or a substantial part of it, to flow down the ditch along the north side of the highway and through the tube, hereinbefore mentioned, back to the draw. The following sketch will permit a better visualization of the conditions existing at the scene of the controversy.

An examination of the record discloses that the draw, as shown in the sketch, has always been the natural and primitive course of drainage from the Vierregger land. Plaintiff contends that the ditch along the north side of the highway is a natural drainage course. The evidence does not sustain this contention. It is true that a part of the lands north of the highway and between the bridge and the tube drain to the east and that the larger part drains to the west through this ditch. There was not, however, a flow of water from the draw through the ditch to the tube until 1909 when the ditch was constructed with a road grader. The evidence is clear that the ditch in the first instance was artificially constructed.

The evidence shows that the highway immediately west of the bridge was occasionally overflowed with water after a heavy runoff of surface water from the Vierregger watershed. Plaintiff contends that this is due to a damming up of the ditch or in permitting it to become filled up. The evidence, however, sustains a finding that the road was flooded because the flow of water in the draw was retarded by the cement wall and levee south of the highway bridge on August Leaders' land, causing the bridge to fill up with sediment and débris to such an extent that it could not carry the drainage water and thereby caused the road to become flooded.

Without any intention of unduly simplifying the facts in this case, we conclude, after a full consideration of the evidence, that the draw was the natural and primitive course of drainage from the Vierregger land, and that the ditch along the highway was artificially constructed and was not a natural drainage course in any sense of the word, in so far as the waters from the Vierregger watershed were concerned. The applicable rules of law are:

"Where water, be it surface water, the result of rain or snow, or the water of springs, flows in a well-defined course, be it ditch or swale or draw in its primitive condition, and seeks its discharge in a neighboring stream, its flow cannot be arrested or interfered with by a landowner

to the injury of the neighboring proprietors, and what a private proprietor may not do neither can the public authorities, except in the exercise of the right of eminent domain." *Roe v. Howard County,* 75 Neb. 448, 106 N. W. 587.

"Water flowing in a well-defined watercourse, whether swale or creek in its primitive condition, may not, except in the exercise of the power of eminent domain, lawfully be diverted and cast upon lands of an adjoining proprietor where it was not wont to run according to natural drainage." *Kane v. Bowden,* 85 Neb. 347, 123 N. W. 94.

"Every landowner must bear the burden of receiving upon his land the surface water naturally falling upon land above it and naturally flowing to it therefrom, and he has the corresponding right to have the surface water naturally falling upon his land or naturally coming upon it, flow freely therefrom upon the lower land adjoining, as it would flow under natural conditions. * * *

"From these rights and burdens, the principle follows that he has a lawful right to complain of others, who, by interfering with natural conditions, cause such surface water to be discharged in greater quantity or in a different manner upon his land, than would occur under natural conditions." *Heier v. Krull,* 160 Cal. 441, 117 Pac. 530.

Plaintiff contends, however, that conditions have been changed and that more than the natural drainage waters are thrown upon his land if the road ditch is not kept open. The evidence shows that the drainage of the Vierregger watershed is through the flat draw hereinbefore described. The land is rather flat and drainage waters have a tendency to spread out both above and below the bridge. It is true that, with the building of the highway and bridge, the flow of the water is narrowed down at the bridge. The evidence also discloses that, if all obstructions were removed below the bridge, it would again fan out and not tend to cut a well-defined channel. The record discloses that the bridge is located across the natural watercourse, that it has three times the capacity required, and that it was located in its present position by an arbitration board, one of the members

of which was selected by the plaintiff. These facts, established by the evidence, lead us to the conclusion that the flood waters are not discharged upon plaintiff's lands in a manner different in volume or course from its natural flow.

The evidence discloses that, after the highway bridge across the draw was completed, plaintiff constructed a cement wall across the draw along the north line of the August Leaders land. This wall was 36 to 40 inches high, 24 inches of which was below the ordinary surface of the ground. Its length was approximately 100 feet. Heavy metal posts were set in the concrete extending four or five feet above the wall to which a 26-inch woven wire fence was attached. This wall and fence caught much rubbish and débris and in effect dammed up the natural watercourse to a considerable extent. This condition caused a heavy sedimentation under and around the bridge and caused flood waters to be turned west along the highway to the damage of the highway and adjoining landowners. The law applicable to the situation is well stated in the following cases:

"Where an obstruction in a watercourse constitutes a permanent and irremediable injury to the rights of the riparian owner, he is not confined to an action for damages, but may, on a proper showing, have a decree ordering the removal or abatement of the obstruction.

"It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstructions of all waters which may be reasonably anticipated to drain there, and this is a continuing duty." *Crummel v. Nemaha County*, 118 Neb. 355, 224 N. W. 864.

"If, for the protection of his own lands, a person, by means of a dam or dike across the channel of a stream, diverts the waters thereof onto the lands of another, where such waters, but for the dam or dike, would not have flowed, he is liable in damages for the injuries inflicted by the diverted waters." *Keifer v. Stanley*, 111 Neb. 822, 198 N. W. 144.

Under these authorities, we conclude that the trial court,

under the facts of this case, properly entered the mandatory injunction compelling plaintiff to remove the obstructions placed in the natural drainage channel and correctly restrained plaintiff permanently from constructing or maintaining any obstructions to the natural flow of surface waters through the primitive and natural drainage course.

Defendants contend that a former decree of the district court for Sarpy county, entered on December 10, 1910, in a case in which Herman Liennemann was plaintiff and Sarpy county and others were defendants, decides all the questions involved in the suit at bar. It is true that this case and the decree entered therein deal with the same factual situation that is involved in this case, but in view of the fact that this opinion is in all respects in harmony with the decree of the trial court in that case, we do not deem it necessary to enter into a discussion of the effect of that decree.

Plaintiff contends that a subsequent decree entered by the district court for Sarpy county on October 31, 1927, in a case entitled Leaders v. Lilley, adjudicated the questions involved in the instant case favorably to the plaintiff's contention. The foregoing decree contained the following language: "That the dam which has been constructed upon the north side of the highway in question should be removed; that the county commissioners of Sarpy county should construct proper and suitable culverts, bridges and drains to permit the flow of water in its natural and primitive course along and across said highway, and that the defendants, and each of them and their successors in office, should be permanently enjoined from creating, or causing to be created, any dam or artificial obstruction to the flow of water in its natural and primitive course along and across said highway."

As we have heretofore said, there is some natural drainage to the west along the north side of the highway, but, under the evidence, there is no natural drainage from the draw leading from the Vierregger watershed through the ditch along the north side of the highway. This being true,

the decree in the *Liennemann* case is not in conflict with this opinion. Defendants contend that the decree in the *Liennemann* case ordered a dam removed from the road ditch to allow a natural flow of water in the ditch to the west. We must necessarily construe this holding to apply only to flood waters arising north of the highway, the natural drainage of which was to the west, and that this part of the decree could have no application to the surface waters arising in the Vierregger watershed, the primitive and natural course of drainage of which was across and over the lands of August Leaders and the plaintiff. We do not think that the decree in the *Liennemann* case is a bar to the decree entered by the district court in the case at bar.

The decree of the trial court in the instant case, under the facts disclosed by the record, is in all respects correct and it is

AFFIRMED.