RICHARD J. ANDERSEN ET AL., APPELLANTS, v. TOWN OF MAPLE, DODGE COUNTY, NEBRASKA, APPELLEE.

36 N. W. 2d 620

Filed April 7, 1949. No. 32486.

*Spear & Lamme* and *Robert L. Flory,* for appellants.

*Charles H. Yost* and *Cook & Cook,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit for a mandatory injunction to compel the defendant township to construct an opening across a township road to permit the waters of a natural watercourse to pass across or under the road as they were wont to do in its natural state. The defendant denied generally the allegations of plaintiffs' petition and alleged that the waters of the natural watercourse had

flowed where they now flow since 1905 and that the defendant has done nothing to interfere with the flow of the waters in the natural watercourse. The trial court found for the defendant and plaintiffs appeal.

The record shows that R. J. Andersen, one of the plaintiffs, was the owner of the northeast quarter of Section 10. The plaintiffs, E. N. Andersen, Carrie Mulloy, and Alice M. Andersen, are the owners of the northwest quarter of Section 11. This quarter section will hereinafter be referred to as the E. N. Andersen land. The plaintiffs, August L. Rebbe and Louis J. Rebbe, are the owners of the south half of the southwest quarter of Section 2, and other lands not material to this litigation. The road in question runs east and west along the north side of Sections 10 and 11 and along the south side of Sections 3 and 2. The southwest quarter of Section 3 and the south half and northeast quarter of the northwest quarter of Section 10 are owned by L. O. Phillips. The northwest quarter of the northwest quarter of Section 10 is owned by N. E. Stout and will hereafter be referred to as the Stout forty. The record shows that a natural watercourse entered the Stout land from the west and crossed this 40-acre tract in a northeasterly direction. At the time of the commencement of this litigation the watercourse crossed the township road at the northeast corner of the Stout forty. At this point there is a wood-box culvert across the road. This culvert is 3 feet by 4 feet. Near the point of crossing there is also a 42-inch circular, concrete culvert in the ditch along the south side of the road. The floor of the wood-box culvert is approximately $2\frac{1}{2}$ feet higher in elevation than the floor of the concrete culvert. This results in a drainage of water to the east onto the lands of the plaintiffs and affords the basis of this suit. For convenience a plat showing the locality and certain facts testified to in the evidence is here shown.

PORTIONS OF SECTIONS 2,3,10,&11, T.18N. R.7E.
. DODGE COUNTY, NEBRASKA

The evidence shows that the watercourse crossing the Stout forty originates in Section 9 and drains an area of 640 acres or more. It follows a well-defined course across the Stout forty and carries a large amount of water when heavy rains fall in its drainage area. Many witnesses who have known the conditions existing in this area for long periods of time testified that these surface and flood waters formerly crossed the road west of the northeast corner of the Stout forty onto the lands of L. O. Phillips. For many years there was a bridge about 150 feet west of the northeast corner of the Stout forty. This bridge was 10 feet by 4 feet and was removed in about 1915. After this old bridge was removed, culverts were constructed at other points between the site of the old bridge and the north-

east corner of the Stout forty. During this period water flowed onto the Phillips land on the north side of the road through the culverts and over the road after heavy rains. It is evident, also, that the natural drainage course had a tendency to work its way east. In 1941 the wood-box culvert was built across the road at the northeast corner of the Stout forty. It is clear, from the record, that water crossed the road onto the Phillips land up to this time whenever heavy rainfall occurred in the drainage area of the watercourse. The evidence is that it would go northeast on the Phillips land for a distance of 20 rods or so and then make its way in a southeasterly direction toward the lands belonging to the plaintiffs. There is no direct evidence that this water ever found its way to Maple Creek by traveling across the Phillips land in a northeasterly direction.

The evidence shows that the lands of the plaintiffs near the common point of their intersection have always been a saucer-shaped, low area. Some water has stood on these lands after rainfalls, during the memory of the witnesses who have long been familiar with it. This situation resulted in the construction of a small drainage ditch from this intersection north along the county road for a quarter of a mile, then east for a half mile, then north to Maple Creek, as shown on the map. In the intersection of the township road with the county road at this point three culverts have been built in an attempt to drain this area through the drainage ditch to Maple Creek. A 4 foot by 8 foot concrete culvert was constructed across the county road in the south ditch along the south side of the township road. A similar culvert was constructed across the township road on the east side of the intersection into the drainage ditch running north. A 30-inch, circular, corrugated, iron culvert was placed in the ditch along the north side of the township road in this same intersection. The township road east of the intersection gradually increased in elevation, with the result that the only drainage of this area was

through the old drainage ditch heretofore described.

While the evidence shows a tendency of the watercourse on the Stout forty to work its way east, as we have heretofore explained, the evidence shows that the grading of the township road made some contribution to this result. In 1941 the defendant through its board of supervisors graded and graveled the township road and increased its elevation about a foot. It also installed the culvert across the road near the northeast corner of the Stout forty at this time. The bottom of this culvert was 2½ feet higher than the culvert in the south road ditch leading to the east from this point. The road ditches were cleaned out as part of the road-grading project. There is evidence that dirt was removed to permit the waters from the watercourse to flow east from this point, although the person or persons responsible for this dirt removal are not shown by the record. There is evidence also that wire netting was placed in the wood-box culvert to divert the water to the east along the south side of the township road. The perpetrator of this act also is not shown by the record. The construction of the box culvert at a higher elevation than the culvert in the south ditch, the raising of the elevation of the road over which water flowed after heavy rains, and the assistance rendered by unknown persons to divert this water to the east through the south-road ditch constitutes convincing evidence that the water from the natural watercourse, or substantial portions thereof, were diverted from their natural course to the east along the township road.

The evidence shows that the elevation of the south ditch along the township road had considerable fall to the east for approximately a half mile when it leveled off into a comparatively flat area. This resulted in the slowing up of the water, its consequent depositing of sediment and debris, and a spreading of the water over the lands of the Andersens which it had not previously invaded. Sediment lodged in the culverts in the common intersection and materially reduced their efficiency. The

evidence is clear that after 1941 more water accumulated over a larger area of the lands of this plaintiff than had been the case before that date. It is quite evident that the diversion of the water to the east, the increased velocity over that from which it was wont to flow in its natural state, and the consequent piling up of waters on plaintiffs' lands with their already limited drainage facilities have operated to damage the lands of these plaintiffs.

The evidence is convincing that the natural drainage across the Stout forty was to the northeast, as shown by the plat, and that its course was so defined on the surface of the ground as to constitute a natural watercourse. We conclude also that the natural watercourse continued across the township road and entered the Phillips land, where it lost its well-defined course and discharged its flow upon the Phillips land. Some of it percolated away, some was trapped in a low area, and some found its way to the southeast onto the low area on these plaintiffs' lands. The Phillips land is therefore burdened with the water discharged from this natural watercourse. Born v. Keil, 146 Neb. 912, 22 N. W. 2d 175. Water flowing in a well-defined watercourse cannot be lawfully diverted and cast upon the lands of others where it was not wont to run in the course of natural drainage. Kane v. Bowden, 85 Neb. 347, 123 N. W. 94; Keifer v. Stanley, 111 Neb. 822, 198 N. W. 144; Born v. Keil, *supra*. Where an obstruction in a natural watercourse constitutes a continuing and permanent injury to other landowners, such landowners may, on a proper showing, obtain a decree ordering the removal of the obstruction. Leaders v. Sarpy County, 134 Neb. 817, 279 N. W. 809; Born v. Keil, *supra*.

The fact that the waters discharged from the natural watercourse upon the Phillips land may find their way to the lands of the plaintiffs does not constitute a defense in the present case. If the Phillips land could be relieved of the burden of receiving the waters from the natural

watercourse without damage to other landowners, we think there would be no right to injunctive relief. But where, as here, the diversion results in the concentration of the waters into a ditch and an increase in their velocity, resulting in a piling up of the waters on the lands of plaintiffs because of the limited drainage facilities in that area, the plaintiffs are entitled to relief from the damage thus caused. The claim of the defendant that it has an easement by prescription to divert the waters of the natural watercourse into the south road ditch has no merit. The statutory period of ten years since the building of the wood-box culvert at the northeast corner of the Stout forty and the increase in elevation of the township road occurred less than ten years prior to the commencement of this suit. The basis for an easement by prescription does not exist.

There is evidence in the record that if the drainage ditch referred to in the evidence were properly maintained the flooding of plaintiffs' lands would be averted. Assuming that this is true, plaintiffs are not required to assume such burden in order to free their lands of the waters which the defendant has unlawfully dumped upon them. Injunction affords the proper remedy in such a case. Jacobson v. Van Boening, 48 Neb. 80, 66 N. W. 993, 58 Am. S. R. 684, 32 L. R. A. 229; Born v. Keil, *supra*.

The judgment of the district court is therefore reversed and the cause remanded with instructions to issue a mandatory injunction as prayed for by the petitioners, and for such other relief as justice and equity may require.

REVERSED AND REMANDED WITH DIRECTIONS.