WILLIAM D. JACK, APPELLEE, v. J. H. TEEGARDEN, APPELLANT.
37 N. W. 2d 387

Filed May 3, 1949. No. 32538.

*Lloyd E. Peterson* and *Betty Jean Peterson Sharp,* for appellant.

*Armstrong & McKnight,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

William D. Jack brought this action in the district court for Nemaha County against J. H. Teegarden. The purpose of the action is to require defendant to remove obstructions from and restore a watercourse on his lands to a sufficient capacity to carry the water that naturally flows therein, to lower or remove a dike constructed thereon just west of the ditch so that it is no higher than the level of his land, and to permanently enjoin the defendant from again either blocking the watercourse or building a dike. In addition to this injunctive relief plaintiff asked for damages in the sum of $300.

The court found generally for the plaintiff and entered its decree directing the defendant to remove the obstructions from the ditch so as to provide therein a carrying capacity for drainage of waters of 36 square feet and to continue to maintain it, free of obstruction, at substantially that capacity. Plaintiff was denied any recovery for damages.

From the overruling of his motion for new trial the defendant appealed. Plaintiff did not cross-appeal from the disallowance of his claim for damages; consequently, that issue is not here for our consideration.

"The right of an appellee in an action to have reviewed

a portion of a judgment or decree against him depends upon whether or not he has perfected a cross-appeal and has assigned error in relation thereto agreeable to the provisions of statute and the rules of this court." Bastian v. Weber, 150 Neb. 709, 35 N. W. 2d 791.

On February 8, 1949, pending appeal but before submission, the appellant died but the action has been revived in the name of R. C. Teegarden, administrator c.t.a. of his estate.

Appellee owns the east half and the appellant the west half of the northeast quarter of Section 10, Township 6, Range 13, in Nemaha County. These eighty-acre tracts will be herein referred to as the Jack land and the Teegarden land.

North of this land is an area of some 160 to 200 acres which drains to the south and southwest. Originally this drainage area also included some 12 to 15 acres in the northwest corner of the Jack land. It all drained south and southwest onto the Teegarden land.

The balance of the Jack land is drained by a swale, which enters it from the east. This swale drains to the south and southwest, leaving the Jack land at the extreme southwest corner. There it enters the continuation or extension of the watercourse hereinafter referred to as extending along the entire east edge of the Teegarden land.

A county road was opened and graded along the north side of this land. The record does not show when this was done. This road caused the water draining from the area to the north to collect against it. As it did so that which collected east of where the bridge was built in the road flowed toward the west and that which collected west thereof flowed toward the east. To permit this water to escape the county built the bridge already referred to. This bridge was located at a point in the road just north of the division line between these two eighties. It was a 10-foot bridge with an 8 by 4½ foot opening thereunder. The west end thereof is immedi-

ately north of the division line between these tracts of land, if extended.

To prevent this water from running onto the Teegarden land, as it would naturally have done, the owners of the Teegarden land built a channel or ditch along the entire east side thereof, throwing the dirt therefrom on the west bank. This ditch was admittedly dug as long as 18 years ago but appears to have been put in sometime before 1912. It developed a channel from 10 to 15 feet wide and from 3 to 5 feet deep with an average capacity of about 36 square feet. This channel continues to the south and west, after leaving the Teegarden land, until it empties into the Little Nemaha River.

At the extreme north end, for some 50 to 100 feet, the channel of this ditch slants slightly to the east and partially onto the Jack land. This was apparently done so that the ditch would properly approach the opening of the bridge.

The evidence shows that in 1940 appellee's agent paid $11.83 or one-half the cost of cleaning out this ditch. It had been cleaned out in 1939. The evidence also shows that in 1945 appellee's agent made a tender of $10 for the same purpose, that is, to pay for some work done in cleaning out the ditch that year. However, the evidence does not establish any agreement between appellee, or his agents, and appellant relating to the construction or maintenance of this ditch.

This ditch on the Teegarden land continued in full use and operation until June 1947. In the spring of that year appellant caused to be cut a 10 to 12 foot hedge that was growing along the ditch between it and the division fence. The brush resulting therefrom was thrown in and along the bank of the ditch and also between it and the division fence. At about the same time appellant built a high dike on his land just west of the ditch. The top of this dike was about 2 feet higher than the Jack land and about 5 feet higher than the bottom of the ditch. It extended for the full length

of the ditch and also about half way across the Teegarden eighty to the west along the north side.

A heavy rain in June 1947 washed silt and debris on top of this brush. This caused the channel of the stream to fill up so its depth was not over a foot. As a result the water flowing in the channel raised, and the dike preventing it from flowing on the Teegarden land, where it would naturally flow, it spread out over the Jack land and did substantial damage to it. Appellant thereafter burned the brush that had not been covered by the silt and debris. He also attempted to remove what was in the ditch but was not successful in doing so. As a result the ditch remains filled with the silt and debris which was deposited there in June 1947.

The evidence shows that the carrying capacity of the ditch, because of the fill, is now not over 12 square feet; that, under conditions normally to be expected, it should have a carrying capacity of at least 36 square feet in order to be able to carry the water coming through the bridge from the drainage area to the north; that before the fill it had sufficient capacity to do so; and that if permitted to remain in its present condition that with every heavy rain, because of the reduced capacity of the channel and the construction of the dike, the Jack land will be seriously damaged by recurring floods. It is against this condition that appellee seeks relief. After personally inspecting the premises the trial court granted the relief.

Applicable here is the following from Probert v. Grint, 148 Neb. 666, 28 N. W. 2d 548: " 'When an action in equity is appealed, it is the duty of this court to try the issues de novo and to reach an independent conclusion without reference to the findings of the district court. Comp. St. 1929, § 20-1925 (this section being now 25-1925, R. S. 1943). But in a case wherein the trial court has made a personal examination of the physical facts, and where, in the same case, the oral evidence in respect of material issues is so conflicting that it cannot be recon-

ciled, this court will consider the fact that such examination was made and that such court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite.' City of Wilber v. Bednar, 123 Neb. 324, 242 N. W. 644. See, also, State v. Delaware-Hickman Ditch Co., 114 Neb. 806, 210 N. W. 279; Greusel v. Payne, 107 Neb. 84, 185 N. W. 336.

" 'The trial court is required to consider any competent and relevant facts revealed by a view of premises as evidence in the case, and a duty is imposed on this court on review of findings made by the trial court to give consideration to the fact that the trial court did view the premises; provided, that the record contains competent evidence to support the findings.' Columbian Steel Tank Co. v. Vosika, 145 Neb. 541, 17 N. W. 2d 488." See Carter v. Parsons, 136 Neb. 515, 286 N. W. 696.

" '* * * Surface water is that which is diffused over the surface of the ground, derived from falling rains or melting snows, and continues to be such until it reaches some well defined channel in which it is accustomed to and does flow with other waters, whether derived from the surface or springs, and it then becomes the running water of a stream, and ceases to be surface water.' (Crawford v. Rambo, 44 O. St. 279, 7 N. E. 429)." Morrissey v. Chicago, B. & Q. R. R. Co., 38 Neb. 406, 56 N. W. 946.

"A watercourse is generally defined as a stream of water with a well-defined existence which makes it valuable to the riparian owners along its course. See, also, section 31-202, R. S. 1943. To such streams riparian rights attach. Where water appears upon the surface of the ground in a diffused state with no permanent source of supply or regular course, its flow is valuable to no one and it is regarded as surface water. But where such waters flow into and become a part of a stream, they cease to be surface waters and are then a part of the running water of the stream." Cooper v. Sanitary

District No. 1, 146 Neb. 412, 19 N. W. 2d 619.   See, also; Mohatt v. Olson, 146 Neb. 764, 21 N. W. 2d 516.

Section 31-202, R. S. 1943, defines a watercourse as follows: "Any depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water, or river or brook shall be deemed a watercourse."

We said in Morrissey v. Chicago, B. & Q. R. R. Co., *supra:* " 'To constitute a water-course it must appear that the water usually flows in a particular direction and by a regular channel, having a bed with banks and sides and (usually) discharging itself into some other body or stream of water. It may sometimes be dry. It need not flow continuously, but it must have a well defined and substantial existence.' (Morrison v. Bucksport & B. R. R. Co., 67 Me. 353)."

And in Miksch v. Tassler, 108 Neb. 208, 187 N. W. 796, we said: "This court in several well considered cases has given its interpretation of the requirements of a watercourse and has held that to constitute a watercourse the size or velocity of the stream is not material, but that it must, however, be a stream in fact as distinguished from mere temporary surface drainage occasioned by freshets or other extraordinary causes, although the flow of water need not be continuous or great in amount.   Pyle v. Richards, 17 Neb. 180; Morrissey v. Chicago, B. & Q. R. Co., 38 Neb. 406; Town v. Missouri P. R. Co., 50 Neb. 768."

"Water which has a definite source and which takes a definite channel is a 'watercourse.' "   Snyder v. Platte Valley Public Power and Irrigation District, 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154.

In Whipple v. Nelson, 143 Neb. 286, 9 N. W. 2d 288, we approved the following from Cloyes v. Middlebury Electric Co., 80 Vt. 109, 66 A. 1039, 11 L. R. A. N. S. 693: "Where an artificial channel is substituted for the natural channel of a stream, or created in such circumstances as indicate that it is designed to be permanent,

riparian rights may attach to it; and where such change is made by mutual action of the riparian owners, their rights and duties in respect of the artificial channel will be the same as if it were the natural one." See, also, Glenn v. Line, 155 Mich. 608, 119 N. W. 1097; Mauvais-terre Drainage & Levee Dist. v. Wabash Ry. Co., 299 Ill. 299, 132 N. E. 559, 22 A. L. R. 944.

Under the facts as disclosed by the record, which we have set forth herein, it is apparent that this artificial channel was created under such circumstances as to clearly indicate that it was designed to be permanent and that riparian rights would and have attached themselves thereto.

"A party seeking an injunction must establish by competent evidence every controverted fact necessary to entitle him to relief, and injunction will not lie unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice." Faught v. Platte Valley Public Power & Irrigation District, 147 Neb. 1032, 25 N. W. 2d 889.

" 'Where water, be it surface water, the result of rain or snow, or the water of springs, flows in a well-defined course, be it ditch or swale or draw in its primitive condition, and seeks its discharge in a neighboring stream, its flow cannot be arrested or interfered with by a landowner to the injury of the neighboring proprietors.' Roe v. Howard County, 75 Neb. 448." Graham v. Pantel Realty Co., 114 Neb. 397, 207 N. W. 680.

" 'Where surface water resulting from rain and snow flows in a well-defined course, whether it be a ditch, swale or draw in its primitive condition, its flow cannot be arrested or interfered with by a landowner to the injury of neighboring proprietors.' (Leaders v. Sarpy County, 134 Neb. 817, 279 N. W. 809)." Seibold v. Whipple, 143 Neb. 167, 9 N. W. 154.

"Water flowing in a well-defined watercourse may not lawfully be diverted and cast upon the lands of an adjoining landowner where it was not wont to run

according to natural drainage." Born v. Keil, 146 Neb. 912, 22 N. W. 2d 175. See, also, Andersen v. Town of Maple, *ante* p. 103, 36 N. W. 2d 620.

" 'For such injury injunction is a proper remedy and an injured party may recover such damages in the same action as he may have sustained by such wrongful act.' Graham v. Pantel Realty Co., 114 Neb. 397, 207 N. W. 680." Seibold v. Whipple, *supra.*

"When water has a definite source and takes a definite channel, it is a watercourse, and no person through whose land it flows has a right to divert it from its natural channel so as to cause injury to another landowner by the diversion." Snyder v. Platte Valley Public Power and Irrigation District, *supra.* See, also, Leaders v. Sarpy County, 134 Neb. 817, 279 N. W. 809; Born v. Keil, *supra;* Andersen v. Town of Maple, *supra.*

Under these principles the appellee was entitled to the relief granted and the decree of the trial court is affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.