THERESA PINT, APPELLEE, V. PETER HAHN, APPELLANT, IMPLEADED WITH MARY TOMEK HAHN AND COUNTY OF PIERCE, APPELLEES.

40 N. W. 2d 328

Filed December 29, 1949. No. 32684.

*Phillip A. Tomek* and *John G. Tomek,* for appellant.

*Frederick M. Deutsch,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit to enjoin the defendant Peter Hahn from diverting surface drainage waters from their natural course and for a mandatory injunction to compel the removal of certain dikes constructed by him in making such diversions. The County of Pierce was a party defendant because of a county road and drainage openings through it which are affected by the litigation.

Mary Tomek Hahn was also made a party defendant because of her ownership of certain lands that might be affected by the decree. The trial court found against the defendant Peter Hahn and he appeals.

The record shows that Theresa Pint, the plaintiff below, is the owner of the southwest quarter of Section 24 and the north half of the northwest quarter of Section 25. The county road here involved is on the section line between these two tracts. The defendant Peter Hahn is the owner of the northeast quarter of Section 25 which lies immediately east of the Pint land in Section 25. Mary Tomek Hahn is the owner of the south half of the southeast quarter of Section 24 which lies immediately east of the Pint land in Section 24. The county road also runs along the section line between the Peter Hahn and the Mary Tomek Hahn lands, the former being to the south and the latter to the north thereof.

The record shows that the county graded the county road about 1921. At the same time the county constructed a culvert across the road from north to south approximately 200 feet east of the northwest corner of the Peter Hahn land. The record shows that the surface water draining from the lands lying north and east of this culvert formerly crossed the road near the place where the culvert was built and continued across the land of Peter Hahn in a natural drainage course to a point 750 feet south of the northwest corner of his land where it entered the Pint land in Section 25. This point of crossing is referred to in the record as at the "willow tree" and we will hereafter so designate it. The low point of the natural drainage on the county road was about 60 feet east of the culvert. The culvert was a 24-inch tubular culvert. It was inadequate to carry all the water collected north of the road during periods of heavy rainfall which resulted in water flooding over the road during such periods. These waters followed the natural course of

drainage in a southwesterly direction across the Peter Hahn land and entered the Pint land at the willow tree.

The evidence shows that at a point commencing approximately 50 feet west of the culvert the county road passed over some higher ground described in the record as a knoll. This knoll extended about 25 feet north and 40 or 50 feet south of the county road. Prior to the grading of the road it prevented the passage to the west of the drainage waters heretofore described. North of the knoll certain drainage waters made their way from the Mary Tomek Hahn land onto the Pint land in Section 24. These waters crossed into the Pint land north of the knoll, thereafter took a southwesterly course across the Pint land in Section 24, and crossed the county road and onto the Pint land in Section 25. Where these waters crossed the county road the county constructed a 30-inch tubular culvert. The second culvert was 814 feet west of the first culvert, the second culvert being west of the knoll and the first culvert east of it. The evidence is clear that in its natural state there was a natural surface water drainage course which crossed the county road near the first culvert and a second which crossed it at the location of the second culvert. These two watercourses converged southwest of the willow tree and found their way into Willow Creek to become a part of a live stream. This being true, the northeast quarter of Section 25 belonging to the defendant Hahn was, in its natural state, burdened with the drainage waters crossing the county road at or near the culvert east of the knoll; the north half of the northwest quarter of Section 25, belonging to plaintiff, was likewise burdened with the drainage waters crossing the county road at or near the culvert west of the knoll.

The record shows that about 1921 the county graded the county road and, in so doing, cut through the knoll. The north road ditch then constructed had an elevation which permitted waters from east of the knoll to flow

west into the drainage course crossing the county road at or near the second culvert west of the knoll and thus burdened the Pint land in Section 25 with these additional waters. Shortly thereafter the plaintiff, or members of her family acting for her, placed a dike in the north road ditch to prevent a flow of surface drainage waters to the west from the natural drainage course east of the knoll. This situation continued to exist until the fall of 1947 when the county again worked the road and constructed new, or cleaned the old, road ditches. The dike in the north ditch does not appear to have been removed. However, the south road ditch was opened so as to permit waters to pass through it to the west.

Defendant Hahn then built a dike on his fence line south of the county road along the north side of the northeast quarter of Section 25 which diverted waters passing under the first culvert to the west and onto plaintiff's land in Section 25. Plaintiff thereupon caused the south ditch to be dammed to prevent the passage of waters through it. Defendant Hahn then constructed a ditch on his own land which by-passed the dike constructed across the south road ditch and thereby continued the diversion of waters from the east to the west watercourse.

The evidence shows that a well-defined drainage course existed from a point near the first culvert across the Hahn land to the willow tree. An engineer who examined the area testified that the natural drainage course was evidenced by small swales from one to two feet in depth, although of such a nature that they were farmed over. From the dike south of the east culvert to the willow tree there was a difference in elevation of six feet. The evidence establishes that drainage waters collected from the northeast and east of the east culvert drained across the Hahn land to the south and crossed onto the Pint land in the vicinity of the willow tree. The Hahn land is therefore burdened with the water dis-

charged from this natural watercourse in accordance with the principles announced in Leaders v. Sarpy County, 134 Neb. 817, 279 N. W. 809; Born v. Keil, 146 Neb. 912, 22 N. W. 2d 175; Andersen v. Town of Maple, 151 Neb. 103, 36 N. W. 2d 620; Jack v. Teegarden, 151 Neb. 309, 37 N. W. 2d 387. It is there held that water flowing in a well-defined watercourse cannot be lawfully diverted and cast upon the lands of another to his damage where it was not wont to run in the course of natural drainage.

Where an obstruction in a natural drainage course constitutes a continuing and permanent injury to other landowners, such landowners may, on a proper showing, obtain a decree ordering the removal of the obstruction. Leaders v. Sarpy County, *supra;* Andersen v. Town of Maple, *supra.*

Where surface water resulting from rain and snow flows in a well-defined course, whether it be ditch, swale, or draw in its primitive condition, and seeks its discharge in a neighboring stream, its flow cannot be arrested or interfered with by a landowner to the injury of neighboring proprietors. Leaders v. Sarpy County, *supra;* Jack v. Teegarden, *supra.* When water has a definite channel it is a watercourse and no person through whose land it flows has a right to divert it from its natural course to the injury of other landowners. Snyder v. Platte Valley Public Power & Irrigation District, 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154; Andersen v. Town of Maple, *supra.*

Where a landowner wrongfully diverts waters flowing in a well-defined watercourse and casts them upon the lands of an adjoining landowner where it was not wont to run in its natural state, injunction affords a proper remedy. Jack v. Teegarden, *supra.* Under the principles announced, plaintiff is entitled to the relief granted by the trial court.

The defendant Hahn complains of the alternative provisions of the decree. In this respect the record shows

that a plan prepared by a competent engineer and designed to control the waters in question was offered in evidence. The County of Pierce and the plaintiff indicated a willingness to accept it. The defendant Hahn has not done so. The decree provides that in the event the interested parties voluntarily accept the plan, the district court will retain jurisdiction for the purpose of enforcing the agreement. There is nothing compulsory or coercive in this portion of the decree. The defendant Hahn can wholly avoid its effect by the simple expedient of not accepting it. The decree entered by the court, which is to be effective if the alternative provisions are not accepted, is sustained by the record and it is affirmed.

AFFIRMED.